**David BOGGESS, Plaintiff,**

v.

**HERITAGE CADILLAC, INC., Automobile Mechanics Local 701, International Association of Machinists and Aerospace Workers, AFL–CIO, Defendants.**

No. 84 C 1753.

United States District Court,
N.D. Illinois, E.D.

June 14, 1988.

418

Gregory A. Stayart, Romanyak & Miller, Chicago, Ill., for plaintiff.

Richard S. Rosen, Michael A. Haugh, Speranza and Veverka, J. Peter Dowd, Deborah R. Nutley, Dowd & Resnick, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

David Boggess ("Boggess") brought this suit under Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185, alleging that defendant Heritage Cadillac, Inc. ("Heritage Cadillac") terminated his employment in violation of a collective bargaining agreement, and that defendant Automobile Mechanics Local 701, International Association of Machinists and Aerospace Workers, AFL–CIO ("Local 701") failed to represent him adequately in grieving his discharge. Heritage Cadillac and Local 701 (collectively, "defendants") move for summary judgment on the grounds that (1) Boggess' claim is time-barred, and (2) Local 701 did not breach its duty to fairly represent Boggess. For the reasons set forth below, defendants' motion is granted.

### Background

Boggess was employed by Heritage Cadillac as a journeyman mechanic from June 30, 1982 until July 15, 1983. Heritage Cadillac is a union shop; all of its mechanics are members of Local 701. Local 701 and Heritage Cadillac are parties to a collective

bargaining agreement that governs employment disputes, among other things.

A complaint between Heritage Cadillac and an employee is subject to a three-step grievance procedure:

1) Step One—The employee presents the matter to the employer for settlement and notifies the union within 30 days of the occurrence; 2) Step Two—if Step One is unsuccessful, the complaint is reviewed by the union representative and the labor committee of the employer within ten days from the date the complaint is presented to the employer; and 3) Step Three—If the complaint is not settled in Step Two within 15 days, the complaint, at the request of either party, may be submitted to arbitration. Collective Bargaining Agreement, Article VIII. A mechanic may be terminated upon receipt of three warning letters that are upheld by the union.

Bob Snell ("Snell"), service manager at Heritage Cadillac, assigned repair orders to the mechanics. Because mechanics are paid by the job, and not by the hour, a mechanic's pay depends upon the types of repair orders received. Although the collective bargaining agreement requires work assignments to be made as fairly as possible, Boggess alleges that Snell gave the most lucrative work to certain of Boggess' co-workers. In March 1983, Boggess complained to Snell about the distribution of repair jobs at Heritage Cadillac. Snell allegedly suggested that if Boggess was unhappy he should quit. When Boggess refused to tender his resignation, Snell allegedly threatened that he would follow union procedures and merely "pay the union off."

On May 20, 1983, Boggess received the first of several warning letters from Snell that culminated in his discharge on July 15, 1983. The letter charged that Boggess took an excessive number of breaks during the day, and that he had attempted to defraud Heritage Cadillac by misrepresenting work performed on booking sheets. The letter was investigated by Bob Feehan ("Feehan"), business agent of Local 701. Feehan threw out two of the charges but upheld the fraud charge. Boggess requested that the matter be reviewed by Bob Heinz ("Heinz"), another business agent for Local 701. When Heinz agreed with Feehan's decision, Boggess asked that the case be submitted to binding arbitration. Allegedly, neither Feehan nor Heinz ever informed him that his grievance would not be arbitrated. Boggess' Rule 12(f) Statement ¶¶ 32–38.

On May 26, 1983, Boggess received a second warning letter from Snell. It charged that Boggess failed to sign a document concerning Heritage Cadillac's policy of using exhaust hoses and the manner for cleaning asbestos brakes. Boggess claims that Feehan did not investigate the warning. In fact, Feehan visited Heritage Cadillac and met with Boggess and other mechanics in response to a letter from Boggess, dated May 26, 1983, complaining of asbestos brake dust and exhaust fumes. Boggess Deposition at 390–93; Feehan Deposition (II) at 9–11, 13–15, 52–53. Heritage Cadillac ultimately purchased an asbestos collection machine. Boggess Deposition at 392.

On May 31, 1983, Boggess received a third warning that accused him of taking photographs of the working conditions at Heritage Cadillac during the business day. Boggess claims that during his lunch hour he took pictures of sewage water that had collected in his lift rack pit, to reflect poor working conditions. Boggess complained in writing to Feehan about the working conditions and suggested that Snell was retaliating against him for his union activities and his attempts to improve the working conditions at Heritage. Following his complaint, the lift rack pit was pumped out. Boggess' Rule 12(f) Statement ¶ 47.

On June 9, 1983, Snell issued a fourth warning letter to Boggess that charged he failed to book the minimum number of hours. Feehan met with Boggess to discuss the matter and held a Step Two grievance meeting with Snell and Boggess to review Boggess' booking tickets. He determined that the warning was valid and upheld the letter. Boggess Deposition at 416–419; Feehan Deposition (II) at 28–29, 31–34.

On June 29, 1983, Snell issued a fifth warning letter against Boggess for missing three entire days of work for alleged doctors' appointments. Feehan met with Boggess and conducted a Step Two meeting with both Snell and Boggess to arrange for Boggess to see a physician during non-business hours. Feehan upheld the warning letter. Boggess Deposition at 432–33, 436–37; Feehan Deposition (II) at 65–72.

On July 5, 1983, Snell issued yet another warning letter charging that Boggess had left work early and deliberately left a customer's car disabled over the July 4th weekend. Boggess was terminated on July 15, before he could pursue this grievance. He contacted Feehan concerning his termination.

A meeting took place at Heritage Cadillac on July 25, 1983 between Snell, Feehan, Heinz, Boggess and Tom Hartigan, the son of the owner of Heritage Cadillac. Feehan and Heinz asked Hartigan and Snell to rehire Boggess; they refused. Feehan and Heinz then offered Boggess a job at Patrick Cadillac. Boggess replied that he wanted his job back and requested that the matter be arbitrated pursuant to Step Three of the grievance procedure.

Boggess heard nothing from Feehan or Heinz and, on August 23, 1983, wrote to Feehan to inquire as to the status of his prior grievances. Feehan and Heinz replied by certified letter, dated August 29, 1983, that the president of Local 701 had determined that grievance procedures were properly followed and that Boggess' grievances would not be pursued further. Boggess subsequently contacted the International Association of Machinists in Washington, D.C. and Des Plaines, Illinois, and was advised that his grievances had been referred to the president of Local 701 for handling. Boggess did not receive a response. Through discovery he learned that the president of the International Association of Machinists had advised the local office that arbitration would not be invoked in connection with Boggess' grievances.

Boggess filed his complaint in this case on February 27, 1984. Defendants Heritage Cadillac and Local 701 moved for summary judgment on the ground that the claim was time-barred. In a report and recommendation dated November 18, 1985, Magistrate Gottschall determined that it was a question of fact as to when Boggess had reason to know that the union had abandoned his termination grievance. This court declined to adopt the magistrate's recommendation and granted defendants' motion. Memorandum Opinion and Order, dated December 30, 1985. Boggess filed a motion to reconsider. On October 16, 1986, this court granted his motion, finding that there was a genuine issue of material fact as to when Boggess should have known that Local 701 had ceased to pursue his grievance. Minute Order, dated October 16, 1986. On August 31, 1987, defendants filed the present motion for summary judgment.

## DISCUSSION

In ruling on a motion for summary judgment, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The moving party may discharge its burden by establishing the absence of evidence to support the nonmoving party's case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986).

### I. The Timeliness of Boggess' Claim

For the second time, defendants move for summary judgment on the ground that the action was not filed within six months of the alleged violation.[1] Although defend-

---

1. An employee's claims against his employer and against the union arising from his allegedly wrongful termination are governed by the six- month statute of limitations contained in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *Del Costello v. International*

ants unsuccessfully propounded the identical argument in their first motion, they contend that subsequent discovery reveals that Boggess actually knew or should have known on July 25, 1983 that Local 701 would not arbitrate his grievance. Boggess maintains that the complaint was timely filed because the statute did not begin to run until the grievance concerning his termination was finally rejected on August 29, 1983.

■ The six-month statute governing an employee's claims against his employer and his union begins to run on the date he discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 496 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). A claim based upon alleged breach of duty of fair representation accrues on the date the union, after being notified of the grievance, fails or refuses to take action to process the grievance. *Id.* The statute is tolled while a claimant pursues internal union remedies, even where the pursuit of such remedies proves to be futile. *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, et al.*, 782 F.2d 674, 681 (7th Cir.1986).

Defendants urge that Boggess must be charged with knowledge on July 25, 1983 that his claim would not be processed further because he admits the following: (1) neither Feehan nor Heinz ever told him that Local 701 would take his case to arbitration; (2) Feehan and Heinz informed him on July 25, 1983 that they believed Heritage Cadillac had just cause to discharge him; and (3) on July 25, Feehan offered him a job at another Cadillac dealership.

Boggess does not take issue with the facts presented by defendants but argues that the statute was tolled until the union formally advised him on August 29, 1983, that it would not further pursue his claim. Boggess claims that on July 25, Feehan told him that it was his right to pursue arbitration, that he expressed a desire to arbitrate, and that he then assumed that

Feehan and Heinz would pursue it. Plaintiff's Rule 12(f) Statement ¶ 67. Boggess sent Feehan a follow-up letter on August 23, 1983, less than one month after the meeting at Heritage Cadillac, to inquire as to the status of his grievances. On August 29, 1983, he received a certified letter from Feehan and Heinz advising him that Local 701 president Donald Gustafson had determined that his grievances would not be pursued further. Boggess filed his complaint on February 28, 1984—less than six months from the date he received the certified letter.

■ There is an issue of material fact as to whether Boggess should have known on July 25, 1983 that Local 701 would not take further action to process his grievance. Further, if the statute began to run on July 25, it was tolled while Boggess pursued internal union remedies. The facts alleged by Boggess support his allegation that he assumed Feehan and Heinz would initiate arbitration on his behalf. Despite the fact that further appeals to Local 701 proved futile, the six-month statute was tolled at least until Boggess received the certified letter from Feehan and Heinz on August 29, 1983. The very fact that Feehan and Heinz sent the letter suggests that Local 701 did not consider the matter closed prior to August 29, 1983. The complaint was timely filed within six months of this date. Therefore, defendants' motion for summary judgment on the ground that the claim was untimely is denied.

## II. Boggess' Fair Representation Claim Against Local 701

Boggess contends that Local 701 breached its duty of fair representation because its business agents failed to investigate any of Snell's warning letters or Boggess' complaints, failed to take either the warning letters or complaints to binding arbitration, failed to advise Boggess as to the status of his grievances and exhibited "obvious hostility" toward him. Plaintiff's Memorandum in Opposition at 10–11. Defendants deny Boggess' allegations and ar-

*Brotherhood of Teamsters,* 462 U.S. 151, 155, 103       S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983).

gue that he cannot establish substantial evidence of intentional misconduct to sustain his claim.

■ A union breaches its duty to fairly represent one of its members where it deliberately and unjustifiably refuses to represent the member in processing a grievance. *Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200, 202 (7th Cir.1983), citing *Hoffman v. Lonza, Inc.*, 658 F.2d 519 (7th Cir.1981). The duty is not breached without "substantial evidence of fraud, deceitful action or dishonest conduct." *Hoffman, supra*, 658 F.2d at 522 (plaintiff must adduce evidence that discrimination is "intentional, severe, and unrelated to the genuine union objective"). The conduct must be intentional, invidious and directed at the particular member. *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 293 (7th Cir.1975).

■ Mere negligence on the part of the union, or perfunctory handling of a possibly meritorious grievance, is not sufficient misconduct to support an action for breach of duty of fair representation. *Grant v. Burlington Industries*, 832 F.2d 76, 79 (7th Cir.1987); *Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242, 244 (7th Cir.1986) (perfunctory representation falls far short of the required intentional misconduct; intentional misconduct is conduct that "sabotages" a possibly meritorious grievance because the worker is on the outs with the union or is a member of some racial or other minority). The fact that a union elects not to pursue a member's grievance does not establish intentional misconduct constituting a breach of duty of fair representation. *Dober v. Roadway Express Inc.*, 707 F.2d 292, 295 (7th Cir. 1983). Failure to arbitrate is not proof of a union representative's arbitrariness, bad faith, or dishonest treatment of grievances. *Melendy v. United States Postal Service*, 589 F.2d 256, 259 (7th Cir.1978).

■ Boggess has failed to demonstrate intentional misconduct on the part of Local 701 sufficient to establish his claim. Although Boggess contends that Local 701 failed to investigate any of Snell's warning letters or Boggess' complaints, Boggess'

own testimony and Rule 12(f) statement details several instances in which union agent Feehan discussed Boggess' complaints with him or went to Heritage Cadillac to investigate a particular complaint or warning letter. Plaintiff's Rule 12(f) Statement ¶¶ 34, 37, 41, 54, 63, 64. For example, in connection with his discharge, Boggess recalls four meetings conducted by Feehan and Heinz at Heritage Cadillac on July 25, 1983 in an effort to persuade Heritage Cadillac to reinstate him. ¶¶ 63–67. Four of the five warning letters from Snell, plus Boggess' termination letter, were grieved through Step Two. Boggess Deposition at 358, 536–37; Feehan Deposition (II) at 17–19, 31–34, 66, 71, 77–79, 82–83. Three of the five warnings were upheld as valid after investigation.

Because the union may elect whether or not to pursue a grievance, Boggess cannot predicate his claim on the fact that no warning letter or complaint was ever submitted to arbitration. At best, Boggess has demonstrated that the representation he received from Local 701 was perfunctory. To the extent that Boggess is unhappy with the casual manner in which his complaints were grieved, the proper remedy is to replace the grievers. *Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242, 245 (7th Cir.1986). National policy favors the non-judicial disposition of labor disputes. *Graf v. Elgin, Joliet & Eastern Ry.*, 697 F.2d 771, 779–80 (7th Cir.1983).

Further, Boggess' allegation that Local 701 agents exhibited obvious hostility toward him is not supported by the facts. Boggess points to Feehan's comments to him that he was being "childish" and "ridiculous," and that Feehan would not "bend over backwards" to help him or "hold his hand." Plaintiff's Rule 12(f) Statement ¶¶ 42, 55. Boggess offers no evidence to suggest that Heinz expressed any hostility toward him.

Any inference of hostility, however, is countervailed by Boggess' own deposition testimony and submissions to this court. For example, Boggess admits that Feehan and Heinz visited Heritage Cadillac to investigate certain claims, including his

grievance in connection with his termination, that they attempted to get him reinstated at Heritage Cadillac and, when unsuccessful, offered to get him a job at another Cadillac dealership. Plaintiff's Rule 12(f) Statement ¶¶ 63–66. Boggess has offered no substantive evidence to suggest that Local 701 discriminated against him for improper reasons (i.e., race or politics), or that he otherwise was "on the outs" with Local 701 at the time of his greivances. He knows of no reason why Local 701 would be "out to get him." Boggess Deposition at 483–85. Because he has not demonstrated intentional misconduct on the part of Local 701, Boggess cannot meet the standard required in this circuit to sustain a claim for breach of the union's duty of fair representation. Accordingly, Local 701's motion for summary judgment is granted.

■ Because Boggess cannot prevail on his claim that Local 701 breached its duty of fair representation, he cannot sustain a Section 301 action against Heritage Cadillac for violation of the collective bargaining agreement. To prevail against the employer, plaintiff must show that his discharge was contrary to the contract and must demonstrate breach of duty by the union. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62 (1981). Individual employees may not circumvent the Section 301 collective bargaining machinery through direct suits against the employer. *LaBuhn v. Bulkmatic Transport Co.,* 644 F.Supp. 942, 948 (N.D.Ill.1986). Since Boggess cannot maintain an action against Local 701, his Section 301 claim against Heritage Cadillac must fall. Heritage Cadillac's motion for summary judgment is granted.

### III. Parties' Cross–Motions for Attorneys' Fees and Costs

■ Boggess claims that pursuant to either 28 U.S.C. § 1927 ("Section 1927") or Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), he is entitled to attorneys' fees incurred in connection with defendants' "clearly frivolous" summary judgment motion. Similarly, Local 701 and Heritage Cadillac maintain that they are entitled to attorneys' fees and costs under Rule 11 because Boggess' counsel was aware that his claim was not supported by the law of this circuit, and because the allegations of Boggess' complaint and affidavit are false and untrue.

Pursuant to Section 1927, an attorney may be personally liable for attorneys' fees and costs where his or her conduct "multiplies the proceedings in any case unreasonably and vexatiously ...", 28 U.S.C. § 1927, or where he or she acts in "reckless indifference to the law." *In re TCI Limited,* 769 F.2d 441, 445 (7th Cir.1985). Rule 11 sanctions may be imposed where a pleading is filed that is not "well grounded in fact [or] ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. Where the reasons for the denial of a motion for Rule 11 sanctions are apparent from the record, the court need not make detailed findings or explanations. *Local 232, Allied Indus. Workers v. Briggs & Stratton,* 837 F.2d 782, 789 (7th Cir.1988).

In this case, neither Boggess' complaint nor defendants' motion for summary judgment is clearly frivolous or devoid of factual support. A claimed breach of duty of fair representation must necessarily be decided on a case-by-case basis; Boggess made a reasonable effort to assert a colorable claim against Local 701. Although this circuit has enunciated the standards to be applied, it is not immediately clear that Boggess' claim fails to meet the requirements. Further, the purportedly false and untrue allegations contained in Boggess' complaint and affidavit (i.e., that he was treated by a physician, rather than an optometrist) are irrelevant to the claim and do not warrant the imposition of sanctions. Further, no single attorney in this litigation has unreasonably multiplied the proceedings or acted with reckless indifference to justify a sanction award under Section 1927. The motions of all parties for attorneys' fees and costs are denied.

## CONCLUSION

For the foregoing reasons, defendants' joint motion for summary judgment is granted, and the cause is dismissed with prejudice. The parties' cross motions for attorneys' fees and costs incurred in connection with this motion are denied.