**Robert G. McLINN, Plaintiff,**

v.

**The BOEING COMPANY and International Association of Machinists and Aerospace Workers, Defendants.**

No. 87 1243 C.

United States District Court, D. Kansas.

June 9, 1989.

Margaret P. Mathewson, Fletcher & Mathewson, Wichita, Kan., for plaintiff.

Paul L. Thomas, Render & Kamas, Douglas L. Stanley, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court on the defendants' separate motions for summary judgment. Plaintiff, a former employee of defendant, the Boeing Company (Boeing), brings this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against Boeing and his collective bargaining agent, International Association of Machinists and Aerospace Workers (IAM). Plaintiff alleges that Boeing, by terminating his employment in March of 1986, breached the collective bargaining agreement covering his job. Plaintiff also alleges that IAM breached its duty of fair representation in handling plaintiff's grievance filed in regards to his termination. Defendants seek summary judgment on the common issues of whether plaintiff's action was timely brought and whether IAM breached its duty of fair representation.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12.

An issue of fact is "genuine" if the evidence is sufficient—significantly probative or more than merely colorable—for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact involves "material" facts when proof thereof might affect the outcome of the lawsuit as determined by the controlling substantive law. *Id.* 477 U.S. at 249, 106 S.Ct. at 2510. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence,

summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

The movant's burden under Fed.R.Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345. (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any," which demonstrate the absence of a genuine issue of fact. *Id.* Fed.R.Civ.P. 56(c). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The movant, however, does not have the burden to prove a negative, that is, to disprove the nonmoving party's evidence. *Id.* at 346. Nor do the claims need be proven false; the movant must only establish that the factual allegations are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. These facts must demonstrate a genuine issue remaining for trial and not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1986).

After reviewing the portions of the depositions submitted by the parties, the court considers the following statements of fact to be uncontroverted for purposes of these motions.

1. Plaintiff was hired as a welder by Boeing on June 5, 1978, and held that position until his discharge on or about March 24, 1986. During his employment, plaintiff was a member of IAM and the collective bargaining unit exclusively represented by IAM.

2. A few months after hiring plaintiff, Boeing also employed another welder, David Wray. Plaintiff and Wray often worked in the same shop during their joint employment at Boeing. Plaintiff and Wray saw each other socially, and plaintiff considered Wray to be a friend.

3. Plaintiff perceived a turning point in their friendship when in January or February of 1986, Wray brusquely refused to assist plaintiff with a welding job. Plaintiff avoided speaking to Wray for a month or more. Plaintiff requested Wray to remove three old cars owned by Wray and stored on plaintiff's property.

4. When plaintiff's union steward was about to retire, Wray and Charlie Stoops asked plaintiff to run for the position. At the election meeting, Wray nominated someone else for union steward. The election resulted in a tie with plaintiff losing on the toss of a coin. On March 7, 1986, plaintiff was told that the next Monday he would be transferred to another work area apart from Wray.

5. On March 8, 1986, plaintiff overheard Wray say to Dudley Hayden: "Well, it's about time." After Wray left, plaintiff asked Hayden what Wray was referring to when he made that statement. Hayden explained that Wray meant it was about time that plaintiff was transferred to another shop. Angered by this comment, plaintiff followed Wray to his station and without saying a word struck him on the jaw. Wray did not strike back and said, "Well, I hope you got your money's worth." Plaintiff responded: "Well, I'm not through with you yet." Wray then walked up to his supervisor and requested

that Security be called. Security personnel escorted plaintiff and Wray out of the plant, and they were advised of their suspension pending an investigation.

6. A few days after the incident, a Boeing representative interviewed plaintiff at his home and took a written statement. On March 24, 1986, Boeing discharged plaintiff for his violation of the no-fighting rule. Wray was then advised that he was reinstated without back pay during his suspension.

7. Prior to this incident, plaintiff was aware of Boeing's policy against fighting and had read Boeing's rule book on that matter. When he struck Wray, plaintiff believed he would probably be terminated as a result. Plaintiff admits he violated the Boeing rule.

8. On or about March 24, 1986, plaintiff went to the IAM office and requested a grievance to be filed on his termination. Dale Moore, a business representative for District Lodge 70 of the IAM who was assigned to Local 834 at Boeing, interviewed plaintiff about his termination and typed a grievance containing plaintiff's allegations which plaintiff signed.

9. Moore has a standard procedure in handling and processing grievances. After the employee fills out a complaint form, Moore reviews the collective bargaining agreement to determine the contractual basis for the grievance and drafts the grievance. Moore next presents the grievance to Boeing's department of labor and discusses it several times with one or more individuals with that department in an effort to improve the employee's situation, particularly if he has been terminated. Moore investigates the grievance by interviewing the employee's union steward and any witnesses to the incident. If no concessions are made by the labor department, Moore decides whether arbitration is potentially successful based upon his investigation and company discussions.

10. On March 24, 1986, after concluding the discussion with plaintiff, Moore filed a grievance contesting plaintiff's discharge. In handling the grievance, Moore interviewed plaintiff and Wray. He discussed the grievance with the manager of the tooling department, the general supervisor, the first level supervisor, and the union steward. Moore also reviewed the security investigation files in which statements from plaintiff, Wray and other witnesses were kept.

11. From his investigation, Moore determined the facts were undisputed that plaintiff struck Wray after following him back to the work station and that plaintiff had thrown the only blow. The Boeing "anti-fighting" policy provided in pertinent part: "Dismissal is the standard penalty when blows are struck in other than necessary self defense, or when any weapon is used or displayed in a threatening manner."

12. Over approximately twenty days, Moore spent 10 hours investigating plaintiff's grievance and attempting to obtain his reinstatement from senior management at Boeing. Moore talked to labor department personnel on approximately eight occasions during his investigation urging that plaintiff be allowed to return to work, but Boeing refused reinstatement.

13. During the pendency of the union's handling of plaintiff's grievance, Moore received the two arbitration decisions in the George Tong–Thomas Carr grievances, in which both were terminated also for fighting on the company premises. One arbitrator denied Tong's grievance, but another arbitrator granted Carr's grievance in part awarding reinstatement with backpay except for a 45–day period of suspension. As determined by the arbitrators, the incident involved Carr, who was approximately 6′ 7″ tall and weighed 280 pounds, approaching George Tong, a one-armed man who weighed approximately 150 pounds and intentionally scuffing Tong's shoes. In response, Tong struck Carr in the head making his lip bleed, but Carr did not strike back. Moore took both of these grievances to arbitration. The arbitration decision on Tong was rendered on June 19, 1986, while the Carr decision was made on July 29, 1986. [Plaintiff calls attention to the other disciplinary cases involving fighting which were discussed by both arbitrators. The summary of those other cases is insuffi-

cient to draw any inferences for purposes of comparison or contrast to the present case. Plaintiff has not brought forward any additional records regarding those other grievances.]

14. Based on his experience and knowledge, Moore was unaware of any instance where an employee who struck the first blow to another employee's face was also later reinstated by the employer. In March of 1986, Donna Moore, Dale Moore's daughter, was discharged for fighting with a fellow employee in the parking lot. Richard Aldrich handled that grievance, and the termination was later changed by Boeing to a voluntary resignation. [Plaintiff also refers to testimony of Moore that he could not recall, without researching the files, any employee who was terminated for fighting prior to January 1, 1986, and the union representative was eventually unable to have the punishment modified to something less severe.]

15. Besides considering past arbitration decisions, Moore also discussed on several occasions McLinn's grievance and the possibility of arbitration with Richard Aldrich, the security director of District Lodge 70. Based upon his investigation, the recent arbitration results of the Tong/Carr grievances, and his examination of arbitration books, Moore believed plaintiff's grievance would be denied in arbitration. Moore also knew that the same arbitrators in the Tong/Carr grievance would hear plaintiff's grievance.

16. After deciding not to arbitrate plaintiff's grievance, Moore met with Boeing management and negotiated a change in plaintiff's personnel records to show voluntary resignation rather than involuntary termination.

17. On October 28, 1986, Moore telephoned plaintiff informing him that the company would not reinstate him and that his grievance would not be arbitrated. On October 29, 1986, Moore forwarded a letter which reiterated the settlement reached and the reasons for not proceeding to arbitration. Plaintiff received this letter on November 1, 1986. [Plaintiff's efforts to controvert these facts are untenable be-cause of the following deposition testimony of the plaintiff:

Q. You said you had two or three conversations. Do you remember another conversation?

A. Yes, sir, he [Dale Moore] called me up on the telephone.

Q. And when was this?

A. Before he sent that letter to me because they wanted my address and stuff. They didn't have it or something they said.

Q. And what was it he told you on the phone?

A. Just about the same thing that he told me there in that letter, that the company wasn't going to put me back to work.

Q. Okay. So he called you on the phone and told you that the company wasn't going to put you back to work?

A. Yes.

Q. Did he tell you the union wasn't going to press the grievance any further?

A. Yes, sir, he told me the union wasn't going to press the grievance any further because he said there was another instance, I think about the same time mine was, a one-armed guy hit a guy, and he said the arbitrator ruled against it. He told him that the arbitrator told him if he had another case like in this case that again he was going to rule against it.

(McLinn Depo. p. 38). Later in his deposition, plaintiff does state that he was surprised upon later reading Moore's letter that his termination was changed to a voluntary resignation. (McLinn Depo., p. 78)).

18. Plaintiff filed his complaint in this case on April 29, 1987.

While the long-standing rule is that an employee may sue his employer for breach of the collective bargaining agreement only after exhausting grievance or arbitration remedies provided therein, the Supreme Court has recognized an exception where the union representing the employee also

"acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (citing in part *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)). Despite the finality or outcome of the grievance proceedings, the employee in these circumstances can sue both the employer and the union. *Garcia v. Eidal Intern. Corp.,* 808 F.2d 717, 720 (10th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987). Termed "hybrid § 301/fair representation litigation," the suit consists of two causes of actions which are "inextricably interdependent." *Del-Costello,* 462 U.S. at 164–165, 103 S.Ct. at 2290–91. First, the employee relying on § 301 alleges the employer breached the collective bargaining agreement. Second, the employee claims that the union mishandled the grievance and arbitration proceedings in breach of its duty of fair representation which the Supreme Court has implied from the scheme of the National Labor Relations Act (NLRA). *Reed v. United Transport. Union,* 488 U.S. ——, 109 S.Ct. 621, 627, 102 L.Ed.2d 665, 677 (1989). While the employee may choose to sue either one defendant or both, his burden of proof remains the same to show that his discharge was contrary to the agreement and that the union breached its duty to represent him fairly. *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291.

*Statute of Limitations*

In *DelCostello,* the Supreme Court borrowed the six-month statute of limitations from section 10(b) of the NLRA, 29 U.S.C. § 160, and applied it as the proper limitations period in hybrid § 301/fair representation suits. 462 U.S. at 169–72. The Court found this limitations period to provide the necessary uniformity and a balance between the employee's satisfactory opportunity to vindicate his rights and the policy interest in quickly resolving "labor disputes favored by federal law." *Id.* at 166–69, 103 S.Ct. at 2291–93.

Defendants Boeing and IAM contend the plaintiff's cause of action accrued on October 28, 1986, when Moore advised plaintiff that arbitration would not be pursued on his grievance. From this premise, defendants conclude the six-month limitations period expired the day before plaintiff filed his suit in this court. Plaintiff counters that his cause of action did not accrue until receipt of the letter dated October 29, 1986, and he alternatively argues estoppel and the benefit of an extra day since his conversation with Moore occurred in the evening of October 28th.

Although the courts have varyingly stated the general rule on when hybrid actions accrue, most courts begin counting when plaintiff knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the alleged violations. *Arriaga–Zayas v. Int'l Ladies' Garment Workers,* 835 F.2d 11, 13 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988); *Sosbe v. Delco Electronics Div. of G.M.C.,* 830 F.2d 83, 87 (7th Cir.1987); *McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232, 1236 (6th Cir.1987); *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir.1986); *King v. New York Telephone Co., Inc.,* 785 F.2d 31, 34 (2nd Cir.1986); *Howard v. Lockheed–Georgia Co.,* 742 F.2d 612, 614 (11th Cir.1984) (per curiam). *But see Craft v. Auto, Petro. & A.L.E.U. Local 618,* 754 F.2d 800, 803 (8th Cir.1985) (Hybrid claims "accrue on the date the employee's grievance is finally rejected and his contractual remedies are exhausted."); *Hayes v. Reynold Metals Co.,* 769 F.2d 1520, 1522 (11th Cir.1985) ("[A] cause of action for the breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage."). These other statements appear to be simply variations on the same theme rather than different rules of law. In a wrongful termination case, the hybrid action generally accrues when the employee learns or receives notice that the union has refused or neglected to assist him or has decided not to pursue his grievance to the

next step for processing. *Gharty v. St. John's Queen Hosp.*, 869 F.2d 160, 165 (2nd Cir.1989); *Fajardo v. Foodtown Supermarkets*, 702 F.Supp. 502, 507 (D.N.J.1988); *Sewell v. Genster Gypsum Products Co.*, 699 F.Supp. 1443, 1451 (D.Nev.1988); *Boggess v. Heritage Cadillac, Inc.*, 687 F.Supp. 417, 421 (N.D.Ill.1988).

■ Commencement of the limitations period has not been delayed until the employee's receipt of formal written notice if the employee already knew of the adverse decision of the arbitrator or the union. *Dowty v. Pioneer Rural Elec. Co-op., Inc.*, 770 F.2d 52, 57 (6th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985); *Howard v. Lockheed–Georgia Co.*, 742 F.2d 612, 614 (11th Cir.1984) (and cases cited therein). Plaintiff contests whether his actual knowledge on October 28th was sufficient to trigger the limitations period. In his deposition, Moore was asked to explain a Union procedure existing for internal review of his decision not to arbitrate. Plaintiff suggests that Moore may have led plaintiff to believe that the decision against arbitration was only Moore's and was not yet the union's position. Finally, plaintiff argues a lack of knowledge of the settlement, in particular, that his discharge was being changed to voluntary resignation in his personnel records.

Plaintiff did not pursue any internal review of Moore's decision and has not testified that he understood Moore to say on October 28th that the decision not to arbitrate was not yet an official union position. Speculation or conjecture is not a worthy basis for extending a limitations period. *See generally Sosbe*, 830 F.2d at 87. Although not understanding the complete terms of the settlement, plaintiff did learn from the telephone conversation that Moore, as his union representative, had decided not to pursue his grievance any further and that this decision adversely affected him. Unless there is some reason for tolling the limitations period, plaintiff's action is untimely as it accrued on October 28, 1986.

Tolling may be available where the adverse decision is concealed or is represented as nonfinal and subject to additional proceedings. *Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1327 (7th Cir.1986). While *awaiting* the outcome of his grievance, plaintiff states it was represented to him that management wanted him back and that Wray and he were considered to be equally at fault in the incident. Plaintiff does not explain in his brief nor has he apparently testified by deposition how these representations caused him to delay filing this action. These representations in no way temper Moore's later comments that the grievance would not be pursued to arbitration and that Boeing would not reinstate him. The court sees no basis for tolling the limitations period.

■ Finally, plaintiff argues that since his conversation with Moore occurred in the evening hours after the courthouse has closed, he should be given the benefit of a full day and allowed to file his action on April 29, 1987. Not surprisingly, plaintiff has not offered any legal authority for this argument. The certainty of limitations period would be damaged and the complexity enhanced if the courts began concerning themselves with the particular hours and minutes when the action had accrued and the suit was later filed. Plaintiff failed to file his action within the six-month limitations period.

Even though this ruling on the issue of statute of limitations is sufficient grounds to grant defendants' motions, the court will briefly consider defendants' contentions on the duty of fair representation.

*Fair Representation*

In *Vaca*, the Supreme Court explained the union's duty of fair representation as requiring the union's agent "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." 386 U.S. at 177. When applied to specific factual circumstances, these broad and encompassing terms have revealed their malleable character. Some courts have adopted an approach which varies the standard of conduct to the specific duty alleged

to have been breached. Specifically, the Ninth Circuit has held:

> [W]e ask first whether the act in question involved the union's judgment, or whether it was "procedural or ministerial." If it is a union's judgment that is in question ... the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith. Arbitrariness alone would not be enough. Only when the challenged conduct was procedural or ministerial does arbitrariness become controlling.

*Salinas v. Milne Truck Lines, Inc.*, 846 F.2d 568, 569 (9th Cir.1988) (quoting *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir.1988). The Seventh Circuit also requires more than arbitrariness:

> A union breaches its duty to fairly represent one of its members where it deliberately and unjustifiably refuses to represent the member in processing a grievance. *Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200, 202 (7th Cir. 1983), citing *Hoffman v. Lonza, Inc.*, 658 F.2d 519 (7th Cir.1981). The duty is not breached without "substantial evidence of fraud, deceitful action or dishonest conduct." *Hoffman, supra*, 658 F.2d at 522 (plaintiff must adduce evidence that discrimination is "intentional, severe, and unrelated to the genuine union objective"). The conduct must be intentional, invidious and directed at the particular member. *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 293 (7th Cir.1975).

*Boggess v. Heritage Cadillac, Inc.*, 687 F.Supp. 417, 422 (N.D.Ill.1988).

The Tenth Circuit has not expressly adopted an approach resembling a sliding scale of duty for the union. For the most part, the Tenth Circuit's decisions have not addressed circumstances where the challenged union activities called for the exercise of judgment or discretion. *Foust v. International Broth. of Elec. Workers*, 572 F.2d 710 (10th Cir.1978), *rev'd in part on other grounds* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) (union failed to file grievance within the required 60–day period); and *Barnard v. Commercial Carriers, Inc.*, 863 F.2d 694, 697–99 (10th Cir.1988) (the processing of untimely grievances adverse to another employee, without challenging their timeliness, constitutes a breach of the duty of fair representation). In *Denver Stereotypers & Electrotypers U. v. N.L.R.B.*, 623 F.2d 134 (10th Cir. 1980), the court reversed a finding that the union official's interpretation of the union's local constitution and bylaws was not so unreasonable as to sustain an inference of arbitrariness or bad faith. This latter case did involve the union's exercise of some judgment, and the Tenth Circuit relied on arbitrariness and did not refer to any scienter element.

Putting aside the issue of whether the Tenth Circuit would follow the Ninth and Seventh Circuits, this court believes the *Vaca* decision and other common statements of law on the duty of fair representation support the conclusion that plaintiff McLinn cannot prove any breach by the union.

■ An employee does not have an absolute right to have his grievance taken by the Union to arbitration. *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917; *Chernak v. Southwest Airlines Co.*, 778 F.2d 578, 581 (10th Cir. 1985). "[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion...." *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. Showing that plaintiff's grievance had merit or that plaintiff could have won on arbitration does not establish that the union's handling of the grievance was perfunctory, arbitrary, discriminatory, or in bad faith. *Salinas*, 846 F.2d at 569; *Brown v. Trans World Airlines*, 746 F.2d 1354, 1359 (8th Cir. 1984). The Supreme Court has similarly stated with some explanation:

> For if a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith

would surely be substantial. Since the union's statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against both employer (in a § 301 suit) and union, this severe limitation on the power to settle grievances is neither necessary nor desirable.

*Vaca,* 386 U.S. at 193, 87 S.Ct. at 918. The employee must show the union processed his grievance in an arbitrary or bad faith manner. *Id.*

■ "To show that the union acted in a perfunctory manner there must be evidence that the union acted without concern or solicitude, or gave plaintiff's grievance only cursory attention." *Brown,* 746 F.2d at 1357 (citations omitted). The Union is accorded a "wide range of reasonableness" in representing its members. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563–64, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976). Negligence or poor judgment does not sustain a claim of unfair representation. *Stidham v. White Consol. Industries, Inc.,* 685 F.Supp. 1008, 1012 (D.Mich. 1987). Where the union has conscientiously evaluated the plaintiff's grievance and can articulate an adequate legal rationale for its decision against proceeding to arbitration, the duty of fair representation has not been breached. See *Stidham,* 685 F.Supp. at 1012; *Spietz v. Kaiser Aluminum and Chemical Corp.,* 672 F.Supp. 1368, 1372 (D.Wash.1987). Courts are not to second-guess union decisions when based upon realistic and good faith assessments of the merits of a grievance. *Stidham,* 685 F.Supp. at 1012–1013.

■ Consistent with these precepts, defendants have successfully shown the uncontroverted facts to sustain only a finding that IAM did not breach its duty of fair representation in handling plaintiff's grievance. Plaintiff contends an evaluation of the union's conduct first demands resolution of the merits to plaintiff's grievance. Plaintiff's position clearly contradicts established precedent that a meritorious grievance and the union's erroneous assessment of it are insufficient alone to prove the union breached its duty of fair representation. Moore has rationally articulated legitimate reasons for not pursuing plaintiff's grievance to arbitration. The undisputed fact of plaintiff striking Wray in the face without any physical justification and the recent arbitration decision upholding an employee's discharge for fighting are reasonable grounds for Moore's decision. Plaintiff has not come forth with any evidence to show that Moore's actions were not based upon a realistic and good faith assessment of the merits of plaintiff's claims.

The court sees nothing in Moore's interpretation and reliance on precedent to suggest bad faith or arbitrariness. Moore's reliance on one precedent over others is a judgment call that this court cannot second-guess unless the circumstances indicate it was made discriminatorily, arbitrarily or in bad faith. Plaintiff has not presented any factual issues as to question the substantial deference otherwise accorded the union's decision not to pursue a grievance.

The court does not accept the proposition that summary judgment is necessarily unavailable when the uncontroverted facts depend upon the testimony of a witness who may have an interest in the litigation. Plaintiff's claim of unfair representation will not survive summary judgment merely because he believes the defendants' motion must stand or fall upon Moore's credibility. Most importantly, plaintiff has not shown that the only source of evidence regarding Moore's actions and their reasonableness is through Moore. Without such a showing and without sufficient grounds for questioning Moore's credibility, the court will grant defendants' motion for summary judgment on the issue of the union's duty to represent fairly the plaintiff. Unable to sustain this burden, plaintiff cannot advance any claim against the employer. *Boggess v. Heritage Cadillac, Inc.,* 687 F.Supp. 417, 423 (D.Ill.1988).

IT IS THEREFORE ORDERED that the motions for summary judgment of defendants Boeing and IAM are granted.