Robert BARNARD, Plaintiff–Appellant,

v.

COMMERCIAL CARRIERS, INC.; Teamsters, Chauffeurs, Warehousemen and Helpers of America Local Union No. 222, Defendants–Appellees.

No. 87–1017.

United States Court of Appeals, Tenth Circuit.

Dec. 15, 1988.
Rehearing Denied Feb. 14, 1989.

Ronald F. Sysak and Erik Strindberg of Prince, Yeates & Geldzahler, Salt Lake City, Utah, for plaintiff-appellant.

Nathan J. Fullmer, Salt Lake City, Utah, for defendant-appellee, Commercial Carrier.

Stephen W. Cook of Cook & Wilde, P.C., Midvale, Utah, for defendant-appellee, Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 222.

Before SEYMOUR, ANDERSON, and BARRETT, Circuit Judges.

BARRETT, Senior Circuit Judge.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir. R. 34.1.8(c). The cause is therefore ordered submitted without oral argument.

Robert Barnard (Barnard) appeals from an order of the district court granting summary judgment in favor of Commercial Carriers, Inc. (CCI) and Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 222 (Local No.

222), appellees. A review of the relevant, stipulated facts will facilitate our review.

CCI and Local No. 222 are bound by a multi-employer collective bargaining agreement (CBA) bargained for by the Teamsters Union in an attempt to minimize loss of employment and to protect seniority rights when automobile manufacturers terminate the services of one automobile transporter in favor of another. Prior to 1980, Cooper Transportation, Inc. (Cooper) had been engaged by General Motors (GM) for certain automobile hauling. In early 1980, CCI took over the GM hauling previously performed by Cooper. On March 17, 1980, CCI hired Barnard, a Cooper employee since 1972, as a yardman. Thereafter, in accordance with the CBA, CCI "posted" a yardman seniority list showing Barnard with a yard seniority date of March 17, 1980. No protest to Barnard's seniority date was made.

In January and April, 1980, the National Joint Arbitration Committee heard the grievances of several drivers who had been adversely affected by the shift of GM business from Cooper to CCI. By a compromise agreement, CCI and Local No. 222 settled the disputes by establishing a common driver seniority date of April 7, 1980, for all former Cooper drivers hired by CCI.

Barnard worked as a yardman for CCI until October 21, 1982, when he was laid off. On April 4, 1983, Barnard returned to work at CCI, however, not as a yardman, but as a driver. On January 4, 1984, Barnard requested that his CCI yard seniority date of March 17, 1980, be transferred to the driver seniority list. CCI acquiesced in Barnard's request and on April 30, 1984, posted a driver seniority list showing Barnard's driver seniority date as March 17, 1980.

The transfer of Barnard's yard seniority date to the driver's seniority list was in accordance with Article 26 of the CBA[1] under which "the principle of carry-over terminal seniority shall be recognized." (Brief of Appellant, Addendum No. 4, p.

71). Article 53, Section 5 of the CBA also provided that:

> Protest to any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or date position first appears and if no protests are timely made, the dates and positions as posted shall be deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Brief of Appellant, Addendum No. 4, p. 122).

No protests were made to the April 30, 1984, driver seniority list within 30 days as required by Article 53. On June 11, 1984, 41 days after the April 30, 1984, driver seniority list had been posted, Lester Larry filed a grievance protesting his seniority position. Larry's grievance made no reference to Barnard or the April 30, 1984, driver seniority list. On August 1, 1984, 93 days after the list had been posted, three CCI drivers filed a grievance protesting Barnard's position on the seniority list. Thereafter, Larry's grievance, which was subsequently dismissed as moot, was combined with the August 1, 1984, grievance for consideration by a special subcommittee. A hearing was held on October 10, 1984, to consider the grievances. Barnard was not notified of the hearing and did not appear.

Following the hearing, the special subcommittee issued its report and decision in which it found:

> The parties (Company and Local Union) and the employees [including two of the protesting drivers] who were present at the hearing agreed on the facts that occurred in 1980, as follows:
>
> \* \* \* \* \* \*
>
> 2. All Cooper drivers were placed below Commercial drivers as of an agreed upon date of April 7, 1980.
>
> \* \* \* \* \* \*

---

**1.** The CBA is not included in our record on appeal. However, the appellant's references to the CBA contained in Brief of Appellant as Addendum No. 4, have not been challenged by the appellees.

3. (a) A yard list was posted on March 31, 1980, with Bernard [sic] and Jaketta shown as 3/17/80.

(b) No one protested the 3/17/80 date until Bernard [sic] and Jaketta exercised 'seniority transferability' under Article 26 of the Agreement.

4. (a) The Subcommittee accepts the position of the Local Union and the Company that the April 7, 1980 date for former Cooper drivers was intended to eliminate for the future any seniority controversy as between the former Cooper drivers or the former Cooper drivers and Commercial drivers.

(b) The Subcommittee also accepts the position of the Local Union and Company that the March 17, 1980, date given to the Yard employees, R. Bernard [sic] and F. Jaketta, was not considered a problem in 1980 because 'seniority transferability' under Article 26 of the Master Agreement was not contemplated by the parties and therefore not a factor.

(c) Also, no employee protested the March 17, 1980, date as within thirty (30) days normally necessary under Article 55, Section 5 of the Western Conference Agreement, because it did not directly affect the drivers until 'seniority transferability' was exercised by R. Bernard [sic] and F. Jaketta. R., Vol. I, Tab 26, Exh. K.

The special subcommittee concluded its decision by finding:

Now, therefore, the Special Subcommittee finds based on the above facts and in an attempt to provide equity for all of the parties and to implement the obvious intent of the Company and Local Union in 1980 as follows:

1. Mr. R. Bernard [sic] and Mr. F. Jaketta should have carried a 4/7/80 seniority date as the other Cooper Employees....

   \*     \*     \*     \*     \*     \*

2. The claim of Lester Larry becomes mute [sic] based on the above decision.

*Id.*

After learning of this decision, Barnard filed a grievance with Local No. 222. Local No. 222 refused to process the grievance. On November 9, 1985, Barnard was placed on lay-off status for three days resulting in lost wages and fringe benefits which he would have otherwise received had he retained his driver seniority date of March 17, 1980.

Barnard subsequently filed a "hybrid § 301 [2] duty of fair representation" suit setting forth two causes of action against CCI and Local No. 222. Within his complaint, Barnard alleged that CCI had breached the CBA by changing his seniority date on the basis of an untimely filed grievance and that Local No. 222 had breached its implied duty to fairly represent him.

In granting summary judgment in favor of CCI and Local No. 222, the district court found, *inter-alia:* Under *Del Costello v. Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) an employee must demonstrate both that the collective bargaining agreement was breached and that the union failed to fairly represent the employee's position; Barnard must carry the dual burden of *Del Costello* in order to override the decision of the special subcommittee; the application of the common driver seniority date of April 7, 1980, to Barnard did not violate the CBA and there was no breach of that contract; there is insufficient evidence to determine whether the special subcommittee found that Larry's grievance filed after the 30–day time period was in substantial compliance with the contract or that equitable principles enabled the special subcommittee to reach the merits; even if Barnard could establish non-compliance with the time provisions of the CBA, he would still have to establish that Local No. 222 breached its duty of fair representation, and; that Local No. 222 did not act arbitrarily or breach its duty of fair representation to Barnard by failing to argue that Larry's grievance was untimely, by failing to inform Barnard of the special subcommittee hearing so he could have presented a timeliness argu-

---

**2.** § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982).

ment, or by failing to process Barnard's subsequent grievance challenging the change in his driver seniority date.

On appeal, Barnard contends: (1) Local No. 222 breached its duty of fair representation and CCI breached the terms of the CBA by revoking his March 17, 1980, driver seniority date; (2) the processing of the untimely grievances constituted a breach of the specific language of the CBA and a breach of Local No. 222's duty of fair representation, and (3) certain material facts are present which preclude granting of summary judgment. Because of its dispositive nature, our discussion will be limited to contention (2).

■ Barnard contends that the processing of the untimely grievances filed by Larry and three other drivers constituted a breach of the specific language of the CBA and a breach of Local No. 222's duty of fair representation. In response, CCI, while acknowledging that no objections were filed to the posting of Barnard's driver seniority date within 30 days as required by Article 53 of the CBA, argues "[i]t is ludicrous for Barnard to argue that CCI had breached the CBA when it had acted in good faith in complying with the decision of the subcommittee as the CBA required it to do." (Brief of Appellee, CEC, p. 19). Local No. 222 responds that it did not violate its duty of fair representation to Barnard by failing to assert "an eleven day delay in the filing of the grievance as a technical shield to protect appellant's artificial seniority or by failing to give Barnard notice of the hearing before the special subcommittee." (Brief of Appellee, Teamsters Local No. 222, p. 22). We hold that the processing of the untimely grievances violated the express terms of the CBA and that Local No. 222 breached its duty of fair representation to Barnard in failing to protest the timeliness of the grievances.

At the outset we observe that our review of a grievance award is narrow. In *International Union of Operating Engineers, Local No. 9*, 751 F.2d 364 (10th Cir.1985), we held:

> As this court noted in *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir.1977), the scope of review of arbitration awards is narrow:

> > The courts may not review the merits of a grievance award. An arbitration award will be enforced if 'it draws its essence from the collective bargaining agreement.' In determining whether an award draws its essence from the Union contract, the courts have applied various tests. An arbitrator's award must be upheld unless it is contrary to the express terms of the language of the contract. 751 F.2d at 365.

Thus, "an award cannot be upheld if it is contrary to the express language of the contract." *International Union of Operating Engineers, AFL–CIO, Local No. 670 v. Kerr–McGee Refining Corporation*, 618 F.2d 657, 659 (10th Cir.1980), *citing Mistletoe Express Service v. Motor Expressmen's Union, supra.*

In *Continental Materials Corporation v. Gaddis Mining Company*, 306 F.2d 952, 954 (10th Cir.1962), we recognized the well settled rule that the jurisdiction of arbitrators "to make awards is derived from the agreement of submission, to be interpreted in accordance with principles of contract law" and that, in the absence of express reservation, the parties are presumed to agree that everything necessary to the ultimate decision is included in the authority (here, the collective bargaining agreement) of the arbitrators. In *Continental Materials*, we cautioned, however, that "arbitrators do not have the power to determine their own jurisdiction" and that "the decision of the arbitrators, if beyond their jurisdiction, has no more effect than a similar judgment by a court." 306 F.2d at 954. *See also Barnett v. United Air Lines, Inc.*, 738 F.2d 358, 361 (10th Cir.), *cert. denied* 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984) (the decision of a board or subcommittee, such as here, cannot be deemed conclusive against the parties where the board lacked jurisdiction).

■ Our review of the CBA convinces us that the failure of any one to challenge Barnard's driver seniority date of March 17, 1980, within 30 days after it was posted

on April 30, 1984, deprived the special subcommittee of any jurisdiction it might otherwise have had to entertain a grievance challenging Barnard's driver seniority position.

As set forth *supra*, Article 53, Section 5 of the CBA specifically provided that "[p]rotest to any employee's seniority date or position ... *must* be made in writing to the Employer within 30 days after such seniority date or position first appears and if no protests are timely made, the dates and positions as posted *shall be deemed correct.*" (Emphasis ours) (Brief of Appellant, Addendum No. 4, p. 122). Section 5 also provides that "Any such protest which is *timely* made may be submitted to the grievance procedure." (Emphasis ours) *Id.* The CBA does not provide for submitting untimely protests to the grievance procedure. Thus, we hold that compliance with the 30-day time be considered a jurisdictional prerequisite. Other sections of the CBA support this holding.

Article 7, Section 3, Grievance Procedure provides in part:

Disputes and grievances shall be put in writing and presented to the Company within one (1) week, whenever possible, after the grievance arises, *but in no case later than thirty (30) days after the grievance arises*, except as may be otherwise provided in a Supplemental Agreement. (Emphasis ours) (Brief of Appellant, Addendum No. 4, p. 39).

None of the Supplemental Agreements included in our record on appeal provide any exception to the language that "grievances shall be put in writing ... but in no case later than thirty (30) days after the grievance arises." Article 7, Section 10 provides that "Time limitations regarding the filing of grievances ... apply equally to Employers and Employees." (Brief of Appellant, Addendum No. 4, pp. 46–47). Article 7, Section 13, further provides that grievance committees "constituted under this Agreement shall have the jurisdiction and power to decide grievances which arose under the Agreement ... applying, however, the contract under which the grievance arose." *Id.* p. 47.

Sections 3, 5, and 7 individually and collectively clearly support our holding that the 30-day time limit set forth in the CBA under Article 53, Section 5 must be considered jurisdictional. There is nothing in the CBA which can be construed to endorse proceeding with a grievance filed 93 days after the grievance arose.

Although Local No. 222 and the district court both concluded that Barnard should not be able to utilize the "eleven day delay [in Larry's grievance] as a technical shield to avoid determination by a neutral arbitration committee upon the merits of an important dispute," (R., Vol. I, Tab 37, p. 15), Larry's claim was considered moot by the special subcommittee. As such, the special subcommittee's decision to change Barnard's driver seniority date to April 7, 1980, was, of necessity, predicated on a grievance filed 93 days after the grievance arose, and 63 days after the 30-day time period set forth in Article 53, Section 5, had expired. Under such circumstances, the decision of the district court granting summary judgment in favor of CCI and Local No. 222, affirming the decisions of the special subcommittee must be reversed.

Our holding is consistent with Local No. 222's action in at least one prior dispute reflected by this record. In processing a subsequent grievance challenging Barnard's driver seniority position, a grievance committee dismissed the grievance as untimely:

Based on the fact that Dale Aston did not protest by grievance the first seniority list posted April 30, 1984 within thirty (30) days of posting as required by Article 55, Section 5 of the Western Agreement David Barnard shall be one position above D. Ashton on the seniority list.

(Brief of Appellant, Exhibit L.)

Local No. 222's failure to challenge the timeliness of the grievances also established a breach of its duty of fair representation. In *Foust v. International Broth. of Elec. Workers*, 572 F.2d 710 (10th Cir.), *cert. granted in part*, 439 U.S. 892, 99 S.Ct. 248, 58 L.Ed.2d 237 (1978), the collective bargaining agreement required that a grievance be filed within 60 days of the

date that the grievance occurred. After Foust was injured, the union failed to file a grievance on Foust's behalf within the required 60–day period. Thereafter, the claim, which was filed two days late, was denied by the Railway Board of Adjustment. Foust then sued the union seeking actual and punitive damages for the union's breach of duty to fairly represent him. On appeal, we affirmed the jury's award of $40,000 actual damages and $75,000[3] punitive damages against the union for breach of its duty of fair representation based on its failure to timely file a claim on behalf of Foust against his employer for wrongful discharge.

■ Even if we were to assume that the 30–day time period under Article 53, Section 5 is not jurisdictional, we would nonetheless reverse and remand for additional proceedings. Not only did CCI and Local No. 222 consider two untimely grievances, but their conduct of the grievance hearing violated Barnard's due process hearing rights under the CBA. All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard. *Totem Marine Tug & Barge, Inc. v. North American Towing*, 607 F.2d 649 (5th Cir.1979); *Amalgamated Cotton Garment & Allied Industries Fund v. J.B.C. Co. of Madera, Inc.*, 608 F.Supp. 158 (D.C.Pa.1984). Whereas Article 7, Section 3 specifically provides that "[d]isputes and grievances shall first be taken up by the employee involved," (Brief of Appellant, Addendum No. 4, p. 39) and Article 7, Section 6 provides that "Both parties shall be entitled to present such evidence and witnesses in support of their positions as they see fit," (Id. p. 46), Barnard was never notified of the special subcommittee hearing. The special subcommittee entered a decision in Barnard's absence predicated on the facts as "agreed on" by the parties present at the hearing, including two of the drivers challenging Barnard's seniority.

3. After certiorari was granted in part, the Supreme Court reversed the award of punitive damages, holding that punitive damages were not recoverable under the Railway Labor Act.

**REVERSED AND REMANDED** for reinstatement of Barnard's driver seniority date of March 17, 1980.

SEYMOUR, Circuit Judge, concurring.

I concur in the judgment of the majority reversing the district court's decision in favor of CCI and Local 222, and remanding for entry of judgment in favor of Barnard. I write separately because I believe that the majority opinion is broader than it needs to be.

The majority correctly notes that in order to override the decision of the special subcommittee, Barnard must establish both that the union breached its duty of fair representation, and that the company breached the collective bargaining agreement when it changed his seniority date. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *see also DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–65, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 (1983).

I agree that the union breached its duty of fair representation by failing to raise the timeliness issue on behalf of Barnard. *Cf. Foust v. International Bhd of Elec. Eng'r*, 572 F.2d 710, 715–16 (10th Cir.1978). I also believe it breached this duty by failing to notify Barnard of the grievance proceeding or inviting him to attend. *See Smith v. Hussmann Refrig. Co.*, 619 F.2d 1229, 1241 (8th Cir.1980).

In addition, on this record, I am convinced that Barnard established a breach of the collective bargaining agreement by showing that the special subcommittee considered the grievance when it was not timely filed under the terms of the contract. Because such procedural requirements may sometimes be waived, equitably tolled, or justifiably excused, *see generally*, F. Elkouri & E. Elkouri, *How Arbitration Works* at 191–198 (4th ed. 1985), I cannot agree with the majority that the time limits

*International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

are jurisdictional. Nonetheless, as the district court recognized, there is insufficient evidence in this record to determine whether any equitable principle enabled the special committee to address the merits of the grievance. Therefore, neither the union nor CCI rebutted Barnard's breach of contract showing.

For this reason, I concur in the judgment reversing the district court.