**Robert ROBINSON, Plaintiff,**

v.

**UNION PACIFIC RAILROAD and United Transportation Union, Defendants.**

No. Civ.A. 99–K–841.

United States District Court, D. Colorado.

May 31, 2000.

Jeffrey Menter, Littleton, CO, for plaintiff.

Daniel R. Elliott III, Assistant General Counsel, United Transportation Union, Cleveland, OH, David B. Kiker, Rossi, cox, Kiker, Aurora, CO, Diana C. Fields, Amy Alane Sumner, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

KANE, Senior District Judge.

Robert Robinson filed this action on April 30, 1999 against Public Law Board No. 5914 ("PLB 5914" or "Board"), United Transportation Union ("UTU"), and Union Pacific Railroad ("Union Pacific"), claiming failure to render a timely award, breach of duty of fair representation, and breach of the collective-bargaining agreement. On May 3, 1999, I issued an order striking the Complaint.

Robinson filed a Second Amended Complaint on May 6, 1999. Union Pacific filed a Motion to Dismiss on July 23, 1999, pursuant to Rules 12(b)(1) and 12(b)(6), on the grounds of lack of subject matter jurisdiction and failure to state a claim for relief. On August 9, 1999, UTU filed a Motion for Summary Judgment. On August 16, 1999, I entered a Memorandum and Order granting Union Pacific's motion to dismiss for lack of subject matter jurisdiction. *See Robinson v. Public Law Board No. 5914,* 63 F.Supp.2d 1266 (D.Colo.1999).

Robinson filed a Second Motion to Amend Complaint and Reinstate the Third Claim for Relief on November 30, 1999.[1] I granted that motion on December 2, 1999, reinstating the Third Claim for Relief. On December 31, 1999, Robinson filed a Motion for Clarification of the December 2, 1999 order, specifically requesting that Union Pacific be reinstated as a party. On January 4, 2000, I granted that motion and reinstated Union Pacific as a party *nunc pro tunc.*

The Third Amended Complaint names Union Pacific and UTU as Defendants and asserts a Second [sic] Claim for Relief for Breach of Duty of Fair Representation and a Third Claim for Relief for Petition for Review of Award under 45 U.S.C. § 153, First (q). Pending are Plaintiff's Motion for Summary Judgment against Union Pacific; Union Pacific's Cross–Motions for Relief from Order or, alternatively, for Summary Judgment; and UTU's Motion for Summary Judgment. I deny Plaintiff's motion, grant Union Pacific's cross-motion insofar as it seeks summary judgment and grant UTU's motion based on lack of jurisdiction.

## I. BACKGROUND.

While working as a Hostler/Engineer for Southern Pacific Lines in Denver, Colorado on November 18, 1994, Robinson caused an unauthorized reverse movement of a locomotive without any warning. An investigation of the incident led to Robinson's dismissal. On November 28, 1994, UTU filed a complaint with the Railroad on Robinson's behalf seeking reinstatement with seniority, back pay, and benefits for time lost until Robinson's reinstatement. After some delay, PLB 5914 was convened pursuant to the mandatory arbitration procedures under the Railway Labor Act ("RLA"), 45 U.S.C. § 153 First (i), to hear Robinson's grievance over the discharge. Upon review of the case, the Board found sufficient evidence supporting Robinson's guilt. Based on Robinson's sixteen years of seniority and the finding that the Hostler Helper was not in danger at the time of the incident, however, the Board further found the Railroad had acted unreasonably, arbitrarily, and capriciously in terminating Robinson. As such, on December 10, 1998, the Board ordered Robinson be reinstated. Given the seriousness of the charges and Robinson's careless actions, however, the Board found him deserving of a lengthy suspension and ordered him returned to work without back pay. It also ordered him to undergo retraining as a hostler before returning to work on the job. The Board stated the period Robinson was off between the dismissal and the Board's hearing would be considered a sufficiently lengthy disciplinary suspension.

## II. STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, I view the evidence and draw reasonable inferences therefrom in the

---

1. Although styled as a Second Motion to Amend Complaint, Robinson was actually moving to amend the Complaint for the third time.

light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. *Id.* Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997).

### III. *PLAINTIFF AND UNION PACIFIC'S CROSS-MOTIONS.*

Robinson seeks summary judgment against Union Pacific on the Third Claim for Relief, in which he requests me to set aside the award issued by PLB 5914 on the grounds that it was contrary to the plain meaning of the collective bargaining agreement and the Board exceeded the scope of its jurisdiction. (Third Am. Compl. ¶ 17.) Union Pacific's cross-motion requests me to set aside the December 2, 1999 and January 4, 2000 orders and to require Robinson to comply with Fed. R.Civ.P. 60(b)(2). Alternatively, Union Pacific moves, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for summary judgment on the grounds that I lack subject matter jurisdiction and the Third Claim for Relief fails to state a cognizable claim. I deny Plaintiff's motion, deny Union Pacific's cross-motion insofar as it requests me to set aside the December 2, 1999 and

January 4, 2000 orders, and grant that motion insofar as it seeks summary judgment under Rule 12(b)(6) for lack of subject matter jurisdiction.

### A. *December 2, 1999 and January 4, 2000 Orders.*

Union Pacific requests me to set aside the December 2, 1999 Minute Order (granting the Second Motion to Amend Complaint and Reinstate the Third Claim for Relief) and January 4, 2000 Order Granting Motion for Clarification (clarifying the December 2, 1999 order and reinstating Union Pacific Railroad as a Defendant). Union Pacific further requests that I require Robinson to show the collective bargaining agreement, alleged to be the basis for the filing of the Third Amended Complaint reinstating the Third Claim for Relief, was "newly discovered" in accordance with Rule 60(b)(2). I decline to do so.

By its own terms, Rule 60(b) applies to a party seeking relief from a "final judgment, order or proceeding." It is inapplicable to an order pursuant to Rule 12(b)(6) dismissing some but not all defendants. I find the motion to amend the complaint was properly filed pursuant to Rule 15, rather than Rule 60, and deny Union Pacific's cross-motion insofar as it requests me to set aside the December 2, 1999 and January 4, 2000 orders.

### B. *Cross-Motions for Summary Judgment.*

The RLA, 45 U.S.C. § 151 *et seq.,* established the National Railroad Adjustment Board ("NRAB") to resolve "minor disputes" gave the parties the right to create additional Adjustment Boards, like PLB 5914.[2] *Locomotive Engineers v. Louisville & N.R.R.,* 373 U.S. 33, 36–38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). The Boards have "mandatory, exclusive, and compre-

---

**2.** The RLA as defined applies only to the NRAB, but courts have held the same standard of review applies equally to Public Law

Boards created pursuant to 45 U.S.C. § 153 Second. *Watts v. Union Pac. R. Co.,* 796 F.2d 1240, 1243 (10th Cir.1986).

hensive" jurisdiction over minor disputes. *Id.* at 38, 83 S.Ct. 1059. Once an award has been issued, it is judicially enforceable and cannot be challenged except through the limited judicial review provided by 45 U.S.C. § 153 namely, for failure of the Board to comply with the requirements of the RLA, failure to conform or confine itself to matters within its jurisdiction, or fraud or corruption by a member of the Board. 45 U.S.C. § 153, First (q); *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 58 L.Ed.2d 354, (1978).[3]

Robinson initially invoked this court's jurisdiction to review the award issued by PLB 5914 by alleging the Board exceeded its jurisdiction by failing timely to hold a hearing and render an award, and failing to set a date certain for reinstatement. Rejecting this position, I granted Union Pacific's motion to dismiss for lack of subject matter jurisdiction. *See Robinson*, 63 F.Supp.2d at 1272. Robinson now attempts to invoke this court's jurisdiction to review the Board's award by alleging the Board exceeded its jurisdiction by rendering an award ordering his reinstatement without back pay, contrary to the plain meaning of the collective bargaining agreement.

The award in dispute was issued by PLB 5914, established by the agreement between Union Pacific and UTU dated June 21, 1996, pursuant to 45 U.S.C. § 153 Second. The agreement provided the Board had jurisdiction over the claims and grievances submitted by the UTU "arising out of grievances or out of the interpretation or application of agreements governing rates of pay, rules or working conditions...." (Pl.'s Mot.Summ.J., Ex. D at 2.) PLB 5914 considered Robinson's claim for reinstatement, with seniority unimpaired and payment for all time lost in light of Article 34 of the collective bargaining agreement between Union Pacific, as suc-

cessor to Southern Pacific, and UTU. Article 34(J) states: "In case discipline is found to be unjust, the fireman or hostler involved, if dismissed will be reinstated with full pay for the time he has been out of service." (*Id.*, Ex. A. at 46.)

The Board determined Robinson was guilty of the charge of making an unauthorized reverse movement of a locomotive. (*Id.*, Ex. E at 2.) It nevertheless found Robinson's action "was not of the type that justified discharge" and there was "no just cause" to terminate him. (*Id.* at 2–3.) Robinson contends this finding amounted to a determination that "discipline was unjust" and the Board exceeded its jurisdiction in that reinstatement with full back pay presented the sole remedy under Rule 34(J).

The Board did not find "discipline was unjust" in the sense that there was no ground for it. Rather, PLB 5914 found the discipline imposed was too severe in view of Robinson's lengthy seniority and the fact that no one was endangered. (*Id.*, Ex. E at 2–3.) Under these circumstances, the Board interpreted the language of Article 34(J) to permit it to modify the discipline imposed. Accordingly, it converted the dismissal to a suspension equal to the time Robinson was out of service following his dismissal. (*Id.*, Ex. E at 3.)

Judicial review under the RLA, 45 U.S.C. § 153 First (q), has been described as being "among the narrowest known to the law," *Denver & R.G.W.R. Co. v. Blackett*, 538 F.2d 291, 293 (10th Cir.1976). "An award must be enforced, without judicial review of the evidence, if it draws its essence from the collective bargaining agreement." *Air Line Pilots Ass'n Int'l v. Eastern Air Lines, Inc.*, 632 F.2d 1321, 1323 (5th Cir.1980). "To merit judicial

---

**3.** The Ninth Circuit has recognized a constitutional challenge as a permissible fourth ground by which a federal court can review an adjustment board decision. *See, e.g., English v. Burlington Northern R. Co.*, 18 F.3d 741, 745 (9th Cir.1994); *Edelman v. Western Airlines*, 892 F.2d 839, 847 (9th Cir.1989) (*citing Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Brotherhood of Railroad Trainmen v. Central of Georgia Ry. Co.*, 415 F.2d 403, 412 (5th Cir.1969).

As Robinson acknowledges, courts have directly addressed the question of whether a Public Law Board or other arbitration board exceeds its jurisdiction by ordering an employee reinstated without back pay. *See, e.g., Epple v. Union Pacific Railroad Co.—Eastern Division*, 558 F.Supp. 63 (D.Colo.1983) (Kane, J.); *Lynchburg Foundry Co. v. United Steelworkers*, 404 F.2d 259 (4th Cir.1968); *Brice v. Norfolk S. Ry. Co.*, 894 F.Supp. 323 (E.D.Tenn. 1994). In each of these cases, the court found reinstatement with full pay did not represent the sole remedy for an employee who has suffered an injustice and the Board had not exceeded its jurisdiction by reinstating the employees without back pay.

Robinson argues the wording of the terms of the relevant bargaining agreement in each of those cases distinguishes them in principle from the case before me. I disagree. As stated in *Lynchburg*, "rigid interpretation of the arbitrator's scope of authority is not warranted and would be acceptable only if a contract expressly forbade the arbitrator to exercise any discretion in fashioning [the] award." 404 F.2d at 261.

In *Brice*, the court examined whether a Public Law Board's finding that the sanction of dismissal was excessive for the charged offense amounted to a determination that dismissal was unjust in the sense that there were no grounds for any discipline. As in this case, the Board in *Brice* found adequate evidence to support the charges against the employees. 894 F.Supp. at 324. It nevertheless found the sanction of dismissal too severe. Here too, PLB 5914 ruled Robinson "was deserving of a lengthy suspension as a result of his wrongdoing," (Pl.'s Mot.Summ.J., Ex. E at. 3), and based the award on its finding that the treatment of the time he was out of service after his dismissal as a suspension was not unjust.

Robinson also attempts to distinguish *Brice* and other cases upholding an award of reinstatement without back pay on the ground that Article 34(M) of the collective bargaining agreement limits the Board's authority to fashion a remedy. That section pertinently provides: "(1) The application of 'Discipline by Record' in lieu of actual suspension will ... be applied ... to ... Hostlers ... (2) Discipline will be maintained by Reprimands, Demerits and Dismissal." (Pl.'s Mot.Summ.J., Ex. A at 47.) This does not, however, forbid the Board to exercise any discretion in fashioning an award. Nor can Robinson rely on the wording of Article 34(M) without cognizance of the well-settled principle of federal labor law that collective bargaining agreements include "implied as well as express terms," and "the parties 'practice, usage, and custom' is of significance in interpreting their agreement." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 311, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). *See also Brotherhood of Maintenance of Way Employees v. Atchison T. & S.F. Ry. Co.,* 138 F.3d 635, 641 (7th Cir.1997) (interpretation of a collective bargaining agreement under the RLA, requires looking beyond the document itself to the parties' "practice, usage and custom").

Paragraph H of the June 21, 1996 agreement establishing PLB 5914 recognizes the significance of past practice in interpreting a collective bargaining agreement by providing a claim is to be resolved "under the recognized interpretation placed under the schedule rule involved by the officials of the Company and the General Committee of the organization making that agreement...." (Pl.'s Mot.Summ.J., Ex. D, at. 2.) [4] Without the interpretation

4. I reject Robinson's assertion for the first time in response to Union Pacific's cross-

given by PLB 5914 to the term "unjust," as used in Article 34(J), the Board would have been constrained to uphold Robinson's dismissal as it found he had committed the charged offense.

PLB 5914 was aware of the past practice with respect to the imposition of suspension as discipline. Robinson's discipline history was included in the record before the Board. (Robinson Dep., Ex. 2.) The record revealed he had been charged in May 1994 with essentially the same rule violation that resulted in his dismissal—the unauthorized reverse movement of a locomotive without warning his co-worker. (Robinson Depo. at 6–8.) A suspension was imposed for that infraction. In addition, the practice of imposing a suspension as a form of discipline under the subject collective bargaining agreement is reflected in awards issued by other Public Law Boards, e.g. No. 5061, issued an award (Award No. 1, Case No.1) in which the claimant was awarded back pay from the point the Board felt that discipline became excessive. (Kurtz Decl., Ex. 20.) By not awarding back pay for the period of time before that point, the Board essentially converted that period to a suspension. Moreover, Robinson's counsel's letter to Kurtz dated May 22, 1997 reflects the routine interpretation of Article 34 as permitting discipline in the form of a suspension, in asserting other similarly situated employees had received lesser discipline than Robinson, with specific reference to an employee who had only been given a "60–day suspension." (Robinson Depo., Ex. 14 at 2.)

I find the Board's interpretation of the 1980 collective bargaining agreement as allowing suspension as a form of discipline draws its essence and is rationally inferable from the terms of the agreement as embodied in the parties' practice and custom. As such, the award issued by PLB 5914 is within the Board's jurisdiction, and I have no authority to set it aside or to disturb the interpretation of the collective bargaining agreement as permitting an award of reinstatement without back pay. *See Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*, 632 F.2d at 1324, *Brice*, 894 F.Supp. at 323. I thus deny Robinson's motion for summary judgment and grant Union Pacific's cross-motion seeking dismissal of the Third Claim for Relief for lack of jurisdiction.

## IV. *UTU'S MOTION FOR SUMMARY JUDGMENT.*

UTU originally filed a Motion for Summary Judgment on August 9, 1999. On November 30, 1999, Plaintiff filed a motion to file a Third Amended Complaint and for an extension of time to respond to UTU's Motion for Summary Judgment. I granted the motions and denied UTU's Motion for Summary Judgment without prejudice to renew as directed to the Third Amended Complaint. On December 21, 1999, UTU renewed its Motion for Summary Judgment with certain additions.

UTU argues (1) PLB 5914 had exclusive jurisdiction to resolve Robinson's claim which it has already handled, and (2) the Second Claim for Relief for Breach of Duty of Fair Representation must fail be-

---

motion that the Board's jurisdiction was derived solely from the 1980 collective bargaining agreement as opposed to the June 21, 1996 agreement. Robinson has admitted the Board was established by the June 21 agreement, (Pl.'s Resp. UTU's Mot.Summ.J., Resp. Statement of Undisputed Material Facts ¶ 3), providing the Board "shall have jurisdiction only of the claims and grievances shown on the attached list (Attachment 'A') submitted to it under this agreement." (Pl.'s Mot.Summ.J. Ex. D at 2, ¶ (F)). Moreover, Robinson's reliance on *Barnard v. Commercial Carriers, Inc.*,

863 F.2d 694 (10th Cir.1988) is misplaced. *Barnard* is a decision under the National Labor Relations Act ("NLRA"), which unlike the RLA, does not establish a mandatory arbitration procedure. Claims under the NLRA are arbitrated in accordance with the particular collective bargaining agreement. The RLA, on the other hand, requires referral of unresolved disputes either to the appropriate division of the NRAB or Public Law Boards or other special boards of adjustment (such as PLB 5914) created by agreement of the parties. 45 U.S.C. § 153 First (i) and Second.

cause, under the stringent standards for such action, neither UTU's handling of the investigation of the grievance violated such duty, nor did UTU improperly delay in handling his grievance, nor was UTU's alleged refusal to allow Robinson to have his own counsel at the hearing a breach of the duty.

### A. Jurisdiction over Breach of Duty of Fair Representation Claim.

I have determined I lack jurisdiction to set aside PLB 5914's award or to disturb the interpretation of the collective bargaining agreement. UTU asserts the Second Claim For Relief for Breach of Duty of Fair Representation is an attempt to circumvent the Board's decision. Robinson denies this and claims the union was hostile toward him, failed adequately to investigate his case, failed to allow him to add additional information to be presented to the Board, mislead him about his rights in proceedings before the Board, refused to meet with him, failed to allow an attorney to represent him and did not know that the Board could go forward with two members present.[5]

█ The Supreme Court has held RLA, 45 U.S.C. § 153 First (i), giving the NRAB exclusive jurisdiction to interpret the meaning of the terms of a collective bargaining agreement applies only to "disputes between an employee or group of employees and a carrier or carriers." *Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 329, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). Where the suit is by employees against their own union, claiming breach of duty of fair representation, jurisdiction of the federal courts exists. *Id.* Therefore, although I lack jurisdiction to review PLB 5914's decision, jurisdiction exists over Robinson's claim against UTU for breach of duty of fair representation.

### B. Merits of Breach of Duty of Fair Representation Claim.

#### 1. Duty of Fair Representation.

Under the RLA, a union owes a statutory duty of fair representation to the railway employees it is certified to represent. *See Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202–03, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (duty implied by 45 U.S.C. § 152 Fourth). A union breaches its duty of fair representation only if its actions are "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). A union's actions are arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id.* (further quotation omitted). This irrational standard is deferential, *id.* at 76–79, 111 S.Ct. 1127, and courts are not to second guess the union's decisions, *Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1083 (7th Cir.1994). In order successfully to defend against a motion for summary judgment on a duty of fair representation claim, the plaintiff must point the court to evidence in the record supporting any one or all of these elements, namely that the actions of the union were "arbitrary, discriminatory, or in bad faith." *Id.*; Fed.R.Civ.P. 56(e). "Negligence will not state a claim for violation of [the union's fair representation] duty." *Le'Mon v. NLRB*, 952 F.2d 1203, 1205 (10th Cir.1991); *see also Young v. United Auto. Workers Labor and Employment Training Corp.*, 95 F.3d 992, 997 (10th Cir.1996).

#### 2. Facts Relevant to Breach of Duty of Fair Representation Claim.

Union Pacific, Robinson's current employer, merged with Southern Pacific

---

**5.** Under the RLA provisions governing Board hearings, due process requires: (1) the Board be presented with a "full statement of the facts and all supporting data bearing upon the disputes," 45 U.S.C. § 153 First (i), and (2) the "[p]arties may be heard either in person, by counsel, or by other representatives ... and the ... Board shall give due notice of all hearings to the employee...." 45 U.S.C. § 153 First (j).

Transportation Company/Denver & Rio Grande Western Railroad Company (Southern Pacific), his employer in 1994 when this dispute first arose. (Mem.Supp. UTU's Mot.Summ.J., Statement Undisputed Material Facts (admitted) ¶ 1.) UTU is the duly designated representative under the RLA of hostlers employed by Union Pacific (and previously by Southern Pacific) and was Robinson's duly designated representative at all relevant times. (*Id.* ¶ 2.) PLB 5914 is a System Board of Adjustment under 45 U.S.C. § 151·*et seq.*, to which UTU and Union Pacific are parties pursuant to an agreement dated June 21, 1996. (*Id.* ¶ 3.)

On November 18, 1994, Robinson, who was employed by Southern Pacific as a hostler, made an unauthorized reverse movement of a locomotive without warning his coworker. (*Id.* ¶ 4.) As a result, he received a notice of investigation into the charge of making an unauthorized reverse movement of a locomotive and endangering his co-worker. (*Id.* ¶ 5.) The investigation was held on November 28, 1994, when Robinson was found guilty by the carrier and dismissed from service. (*Id.* ¶ 6.) Robinson admitted he violated a work rule by making the unauthorized reverse movement. He also had a disciplinary record with ten prior incidents. (*Id.* ¶ 7.) UTU, as Robinson's duly designated certified collective-bargaining representative, timely filed a grievance on his behalf contesting his discharge. (*Id.* ¶ 8.) By letter dated February 17, 1996, Robinson agreed in writing to allow UTU to handle the dispute to completion which would be a final and binding decision. This letter also provided that "[there is no time limit involved in this process]." (*Id.* ¶ 9, Decl. Kurtz, Ex. 1.)[6]

After Union Pacific and UTU were unable to resolve the claim, the matter was submitted to PLB 5914 pursuant to the agreement dated June 21, 1996. (*Id.* ·¶ 10.)

Within 30 days after the PLB 5914 agreement had been finalized, the parties met and attempted by telephone to try to agree upon a Neutral Member. (*Id.* ¶ 11.) On September 3, 1996, Southern Pacific notified the National Mediation Board ("NMB") (to whom the agreement had been submitted for authorization) that the parties had agreed on Robert O'Brien as the Neutral Member of the Board. (*Id.* ¶ 12.)

On September 27, 1996, Southern Pacific notified UTU General Chairperson John P. Kurtz, who handled this grievance at the PLB 5914 on behalf of Robinson, that O'Brien, due to prior obligations, could not serve as the Neutral Member on the Board (which, as Robinson admitted, was not Kurtz's fault) and supplied three new candidates for UTU's approval. (*Id.* ¶ 13.) By January 24, 1997, the parties agreed upon Peter Meyers to serve as the Neutral Member. He was appointed by the NMB on January 29, 1997. (*Id.* ¶ 14.) Southern Pacific, which was then actively engaged in a merger transaction with Union Pacific, agreed to hold the hearing on September 12, 1997, shortly after the transaction was to be approved by the Surface Transportation Board. (*Id.* ¶ 15.) While Kurtz was seeking an earlier date, this proposed date accommodated Robinson's personal request for a delay of the hearing made in April 1997 to Kurtz, so he could retain new counsel, as his previous counsel was no longer able to represent him. (*Id.* ¶ 16.)

On July 10, 1997, Neutral Member Meyers informed UTU that the September 12, 1997 date had become unfeasible due to government travel restrictions on arbitrators and personnel changes at Southern Pacific. (*Id.* ¶ 17.) Robinson admitted this delay was not Kurtz's fault. (*Id.* ¶ 18.)

In response, on August 14, 1997, UTU asked Meyers for a new date when travel would be permissible. (Decl. Kurtz at 118,

---

**6.** Robinson admits these facts but argues it is unclear from the letter whether this statement referred to service of notice requesting submission to the Board or to the entire proceed-

ings before the Board. He asserts this statement was misleading in that there were time limits in processing a case before the Board.

Ex. 10.) Robinson believed Kurtz was attempting to seek the earliest possible date for a hearing for him at this time. (*Id.* ¶ 19.) On October 1, 1997, Meyers answered UTU and suggested April 3, 1998 for the new hearing date in Denver. (*Id.* ¶ 20.)

On March 24, 1998, Kurtz wrote Union Pacific requesting it to reinstate Robinson to service during the pendency of his claim at the Board, a request which was later denied by the carrier. (*Id.* ¶ 21.) In addition, after the April 3, 1998 date was found to be unsuitable for Union Pacific, Mr. Menter wrote to Neutral Member Meyers on July 1, 1998, inquiring about a new date and requesting he be permitted to represent Robinson at the hearing. (*Id.* ¶ 22.) On this date, he also wrote to Kurtz about the case and Menter's right to handle the matter at the hearing. He did not complain about any delay in this letter. (*Id.* ¶ 23.)

Kurtz responded he was properly handling the case and the issue over Menter's representation of Robinson was a Board decision. (*Id.* ¶ 24.) Although Robinson admits this, he asserts Meyers said counsel's representation of him at the Board hearing was a matter to be taken up by Union Pacific with UTU, which refused to allow counsel to represent him at the hearing.

On July 6, 1998, Meyers responded to Menter that the April 3, 1998 date had not been convenient for the carrier and assured him that the overall arbitration system was responsible for the delay. (*Id.* ¶ 25.) Union Pacific also responded by reminding Menter that the carrier had offered to convene the Board at anytime in Omaha, however, Robinson did not wish to do so because of the cost of travel to Omaha which would have been at his own expense. (*Id.* ¶ 26.)

Robinson admits the change of the April 3, 1998 hearing date was not Kurtz's fault. (*Id.* ¶ 27.) In the same letter, Union Pacif-

ic refused to permit Robinson to have legal counsel represent him at the hearing. Also, Union Pacific advised Menter he was free to seek a release from the Board and transfer the grievance to the First Division of the NRAB. (*Id.* ¶ 28.) On July 14, 1999, Kurtz advised Menter he would have to appear at the hearing to seek an interpretation of the PLB agreement with respect to whether Menter could represent Robinson at the hearing. He also advised him he could seek a release from the jurisdiction of the Board and transfer the matter to the NRAB where he would be able to represent Robinson. (*Id.* ¶ 31.)

Menter did not make such a request to any party regarding the NRAB, (*id.* ¶ 32), nor did he attend the hearing, nor did Robinson raise the issue of not being allowed to have his attorney present at the hearing, (*id.* ¶ 33). Kurtz spent approximately 129 hours preparing for this hearing. (*Id.* ¶ 34.) Moreover, he met with Robinson, the UTU Local Chairperson who handled the investigation on the property, and Menter to discuss and review the case before the hearing. (*Id.* ¶ 35.)

Robinson denies Kurtz thoroughly investigated the matter to the best of his ability. He states, other than meeting with him and Menter in early 1998, Kurtz refused to conduct any further investigation, and refused to consult with him and his attorney in September 1998 before the hearing. Robinson nevertheless admits Kurtz spent 129 hours in preparation for the hearing, wrote a brief in his support, and argued vigorously to have him returned to work with back pay and benefits. (*Id.* ¶ 36.) He also admits Kurtz gave a copy of this brief to Menter for review before the hearing, and Menter never made any changes to or commented on the document. (*Id.* ¶ 37.)

Robinson apparently denies Kurtz or UTU did not delay the handling of this grievance.[7] In this regard, Robinson re-

---

7. Robinson's brief is confusing in that al-   though he denies Undisputed Material Fact

lies on Kurtz's failure to object when Union Pacific's Gonzales requested a continuance and Kurtz's failure to request a hearing without Union Pacific. He admits, however, that Kurtz did not make a request for a hearing without the carrier member in April 1998 because he believed that action would violate the RLA and the PLB 5914 agreement. (*Id.* ¶ 39.)

The Board met on September 11, 1998, (*id.* ¶ 40), and rendered its award on Robinson's grievance on December 10, 1998, (*id.* ¶ 41). Its decision stated Robinson "was charged with some very serious incidents of wrongdoing," and had "acted carelessly." (*Id.* ¶ 42.) As a result, the Board held Robinson "was deserving of a lengthy suspension" and the "period that [he] was off shall be considered a lengthy disciplinary suspension." (*Id.* ¶ 43.)

### 3. Analysis of Breach of Duty of Fair Representation Claim.

Robinson claims UTU violated the duty of fair representation in handling his grievance by failing to follow the time limits in the PLB agreement, failing to proceed in an expeditious manner, failing to insist on a hearing in April of 1998 when the carrier member was unavailable, refusing to allow Robinson to have an attorney at the hearing, and refusing to investigate the grievance. Based on these allegations, Robinson claims UTU acted with unjustified hostility, handled the grievance in a perfunctory manner, and breached the duty of fair representation claim.

### (a) Failing to Proceed in an Expeditious Manner.

Robinson maintains UTU's alleged delay in handling the grievance amounted to breach of the duty of fair representation. Delay in itself has been rejected by the courts as grounds for alleging such breach. *See, e.g., Armstrong v. Chrysler Corp.,* 972 F.Supp. 1085, 1090 (E.D.Mich.1997) (two

year period between fourth step of grievance appeal and date grievance was withdrawn is not *per se* unreasonable).

Contrary to Robinson's assertion, the plain language of the PLB 5914 agreement did not set a deadline for selection of an arbitrator but required the parties to meet within 30 days for the "purpose of selecting the Neutral Member," (Decl. Kurtz, Ex. 2 ¶ (C)). Moreover, that agreement required the Board to meet within thirty days "after the Neutral Member is selected ... subject to the availability of the neutral," (*id.,* ¶ (E)). Through no fault of the parties, the date was delayed due to the lack of the availability of the Neutral Member. The delay between the time between finalization of the agreement and the date the award was entered was at the instance of Robinson who needed to find a new lawyer to handle his discharge case, (Decl. Kurtz ¶ 7; Robinson Depo. at 44–45), and his unwillingness to travel to Omaha, (Decl. Kurtz ¶ 10).

■ Robinson argues UTU should have insisted on a Board hearing in April 1998 despite the carrier member being unavailable. He relies on 45 U.S.C. § 153 Second, providing, "any two members of the Board shall be competent to render an award." Contrary to Robinson's interpretation, the statute states not that the hearing itself can take place with only two members, but that the decision need only be by a majority. *See Denver & R.G.W.R. Co. v. Blackett,* 538 F.2d at 293 (stating while the PLB consists of a carrier member, an employee member and a neutral member, the decision itself can be rendered by "any two members of the Board"). Furthermore, the PLB 5914 agreement provides "the Board shall consist of three members," (Kurtz Decl., Ex. 2, ¶ (B)). Based on the undisputed facts, any delay or inaction on the part of Kurtz, could not be said to have arbitrarily, un-

---

¶ 37 which deals with Kurtz giving a copy of his brief to Menter (Pl's Resp. Statement of Undisputed Material Facts ¶ 37), his argument is addressed to the question of delay which is the subject of Undisputed Material Fact ¶ 38, which is admitted, (*Id.* ¶ 38).

reasonably, or irrationally delayed the processing of Robinson's grievance.

### (b) Refusal to allow Robinson to have an Attorney at the Hearing.

The June 21, 1996 agreement allows each party (UTU and Union Pacific) to designate an authorized representative. (Decl. Kurtz, Ex. 2 ¶ (G)) ("... the parties may be heard in person or by authorized representatives as they have selected"). This language does not entitle Robinson unilaterally to choose counsel to represent him at the hearing. Moreover, UTU did not refuse Robinson's request for representation at the hearing by Menter. (Decl.Kurtz, Ex. 19.) Rather, it advised that Union Pacific had taken the interpretive position that counsel would not be allowed at the hearing; that at the hearing, if the parties could not agree, the Board would have to take a decision on the issue; and that Robinson could request a release from UTU of the case so it could be transferred to the First Division, NRAB and Robinson could be represented by counsel for that purpose. (*Id.*)

■ Even assuming UTU did refuse to allow Menter to appear at the hearing, courts have found a union's failure to allow attorney representation during grievance and arbitration proceedings does not violate the duty of fair representation. *See, e.g., Barton v. Transportation Communications Int'l Union,* 25 F.Supp.2d 790, 800 (E.D.Mich.1998) (RLA case); *Brown v. Northwestern Pacific Railroad Company,* 1973 WL 1246, at *3 (N.D.Cal. Oct.10, 1973) (RLA case); *Allen v. Allied Plant Maintenance Co. of Tennessee,* 636 F.Supp. 1090, 1098 (M.D.Tenn.1986) (NLRA case).

*Watts v. Union Pacific,* 796 F.2d 1240, 1245 (10th Cir.1986) and *United Steelworkers of America v. Union R. Co.,* 648 F.2d 905, 913 (3rd Cir.1981), on which Robinson relies, are not duty of fair representation cases, but concern Board review under 45 U.S.C. § 153 First (q). Moreover, neither case actually addresses whether an employee is entitled to an attorney at a PLB hearing. *See Watts,* 796 F.2d at 1245 (stating as *dicta,* although a claimant may be entitled to representation by an attorney when appearing before the Board, he had no similar right associated with company disciplinary hearings); *United Steelworkers of America,* 648 F.2d at 912 n. 2 (finding no need to decide whether subdivision (j)'s representation provision applies to PLB hearings).

In addition, Robinson had designated Kurtz in writing to be his representative to handle this claim. (*See* UTU Statement of Undisputed Facts and Robinson's Response ¶ 9.) In accordance with 45 U.S.C. § 153 First (j), Kurtz represented him at the hearing. (UTU Statement of Undisputed Facts (admitted) ¶ 36.) When Menter later sought to represent Robinson at the hearing, Kurtz indisputably responded by saying Menter would have to appear at the hearing and have this issue addressed by the arbitrator. (*Id.* ¶¶ 24, 31). Union Pacific objected to Menter's appearance. (*Id.* ¶ 28).

■ Although the parties were in conflict over this issue, Menter did not appear at the hearing to raise this issue nor did Robinson raise the issue of his not being allowed to have his attorney present at the hearing. (UTU Statement of Undisputed Facts (admitted) ¶ 33.) UTU cannot be blamed for his failure to appear to address this issue. Nor has Robinson come forth with specific facts showing UTU's conduct regarding the issue of Robinson's representation by counsel was arbitrary, discriminatory, or in bad faith.

### (c) Failure Properly to Investigate Robinson's Claim.

Robinson also claims UTU breached its duty of fair representation by failing properly to investigate his claim. The thoroughness of the investigation depends on the particular case, and "only an egregious disregard for union members' rights constitutes a breach of the union's duty."

*Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir.1985). Robinson must establish both that UTU acted at least arbitrarily and that he was actually harmed by UTU's actions. *See Garcia v. Zenith Elecs. Corp.,* 58 F.3d 1171, 1176 (7th Cir.1995).

Robinson admits he committed a work rule violation by making an unauthorized reverse movement. (UTU Statement of Undisputed Facts (admitted) ¶ 7.) Although Robinson failed to follow the safety rules, UTU established: "[Nobody] was endangered as a result of his failure to follow all of the rules. Hostler helper Bau himself stated that 'nothing rolled here' and that he did not believe that he was in danger at the time of the incident ... Claimant's action was not of the type that justified discharge." (Robinson Depo., Ex. 33, PLB 5914 Award at 2–3.) "Although [the] Board [was] cognizant of the number of demerits that he ha[d] accumulated," it returned Robinson to work without back pay. (*Id.* at 3.)

■ Robinson does not throw light on the purpose any further investigation might have served. Nor, considering his admission of guilt and record of demerits, do I find any. In any event, based on the undisputed facts, any lack of additional investigation by Kurtz could at most be characterized as negligent.

*(d) Handling the Grievance in a Perfunctory Manner.*

■ Ignoring the specificity requirement, Robinson argues UTU breached its duty of fair representation by handling the grievance in a perfunctory manner. He nevertheless admits Kurtz spent 129 hours on this grievance, reviewed the case with him and his attorney, wrote a brief, argued vigorously to have him returned to work with back pay and benefits, and succeeded in getting him returned to work. (UTU's Statement of Undisputed Facts (admitted in whole or part) ¶¶ 34, 35, 36 and 37.) This is not the stuff of arbitrary, discriminatory or bad faith conduct.

*4. Conclusion on Breach of Duty of Fair Representation Claim.*

Robinson has not come forward with specific facts showing a genuine issue for trial as to his allegations that UTU's behavior was, in light of the factual and legal landscape at the time, so far outside a "wide range of reasonableness," as to be irrational. *See Air Line Pilots,* 499 U.S. at 67, 111 S.Ct. 1127. In these circumstances, UTU is entitled to summary judgment on the Second Claim for Relief for Breach of Duty of Fair Representation.

## V. CONCLUSION.

For the aforesaid reasons, IT IS ORDERED THAT:

(1) Plaintiff's Motion for Summary Judgment against the Railroad is DENIED;

(2) Defendant Union Pacific's Cross-motion for Relief from Order is DENIED but its Cross-motion for Summary Judgment is GRANTED;

(3) United Transportation Union's Motion for Summary Judgment is GRANTED; and

(4) This case is DISMISSED with each party to bear his or its own costs.