**Pete LE'MON, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Sheet Metal Workers International Association Local Union No. 49 AFL–CIO, Intervenor.**

No. 88–2833.

United States Court of Appeals, Tenth Circuit.

Dec. 20, 1991.

Hugh L. Reilly of the National Right to Work Legal Defense Foundation, Inc., Springfield, Va. and Dan A. McKinnon, III, of Marron, McKinnon & Ewing, Albuquerque, N.M., for petitioner.

Jerry M. Hunter, General Counsel; D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel; Peter Winkler, Supervisory Atty., and Fred L. Cornnell, Attorney; N.L.R.B., Washington, D.C., for respondent.

Gerald R. Bloomfield, Albuquerque, N.M., for real party in interest.

Before SEYMOUR and BALDOCK, Circuit Judges, and SEAY,[*] District Judge.

SEYMOUR, Circuit Judge.

On May 7, 1990, we denied Pete Le'Mon's petition for review of a National Labor Relations Board (NLRB) order denying his claim that the Sheet Metal Workers' International Association, Local Union No. 49 (Union) had breached its duty of fair representation. *Le'Mon v. NLRB*, 902 F.2d 810 (10th Cir.1990) (*Le'Mon I*). Le'Mon claimed that the Union breached its duty by failing to file timely notice of a labor dispute with the Federal Mediation and Conciliation Service (FMCS), and subsequently encouraging a strike rendered illegal by the failure to file.[1] *Id.* at 811. On March 25, 1991, the Supreme Court vacated the judgment and remanded the case to us for reconsideration in light of its recent decisions in *United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), and *Air Line Pilots Ass'n, Int'l v. O'Neill*, — U.S. —, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). *Le'Mon v. NLRB*, — U.S. —, 111 S.Ct. 1383, 113 L.Ed.2d 440 (1991). We affirm after reconsideration of the case, albeit on grounds different from those underlying our decision in *Le'Mon I*.

I.

In our initial review of the NLRB's decision in this case, we held that the duty of fair representation did not apply to cases where a "union's negligent conduct affected *all* its members." *Le'Mon I*, 902 F.2d at 813. Consequently, we affirmed the NLRB's finding that the Union did not breach its duty of fair representation for reasons other than those advanced by the Board. *Id.* at 815. As a result of our understanding of the scope of the duty, we

---

[*] The Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

1. We do not restate the facts here. Our earlier opinion fully describes the circumstances underlying this dispute. *See* 902 F.2d at 811–12.

did not otherwise reach the merits of the NLRB's decision. *O'Neill* holds, however, that the judicially-created duty of fair representation applies to "all union activity," 111 S.Ct. at 1130, thereby invalidating our prior analysis. Consequently, we must again review the NLRB's refusal to find a breach of the Union's duty of fair representation in this case.

## II.

The NLRB found that the Union's failure to file with the FMCS and its subsequent encouragement of an illegal strike amounted to mere negligence. *Sheet Metal Workers & Pete Le'Mon*, 291 NLRB No. 41 at 2 (October 6, 1988). The NLRB refused to find the duty violated when the Union's conduct was in good faith and not outside the parameters defined by *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *Id.* at 4–5. Under *Vaca*, a union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." 386 U.S. at 190, 87 S.Ct. at 916. The NLRB found the Union's behavior negligent rather than arbitrary, and therefore not in violation of its duty. *Sheet Metal Workers*, 292 NLRB No. 41 at 5.

 Arbitrary union conduct breaches the duty of fair representation and invites sanction by the Board and the courts. Thus, "[t]he doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check." *Rawson*, 110 S.Ct. at 1912. *Rawson* underscores the restraint courts must exercise in sanctioning union activity. Specifically, the Court held that "mere negligence will not state a claim for violation of [the union's fair representation] duty." *Id.* at 1913. Instead, union members who claim that their bargaining representatives have violated the duty must allege that the union "improperly discriminated among its members *or* acted in arbitrary and capri-

cious fashion in failing to exercise its duties under the collective-bargaining agreement." *Id.* (emphasis added). The passage illustrates the level to which union conduct must rise to invoke a court's sanction. Under *Rawson*, negligent behavior is not arbitrary within the meaning of *Vaca*.

In *O'Neill*, the Court squarely rejected an argument that "a union need owe no enforceable duty of adequate representation because employees are protected from inadequate representation by the union political process." 111 S.Ct. at 1134.[2] The Court reasoned that a union's duty is "akin to the duty owed by other fiduciaries to their beneficiaries" and that, like a legislature, a union's actions are subject to some judicial oversight in addition to the political checks provided by the National Labor Relations Act (NLRA). *Id.*[3] As in *Rawson*, the Court emphasized that substantive review of union activity "must be highly deferential," *O'Neill*, 111 S.Ct. at 1135, and must be conducted with reference to "the factual and legal landscape at the time of the union's actions." *Id.* at 1130.

The recent Supreme Court decisions, taken together, teach that a court may review all union activity under the duty of fair representation, and that a court may inquire into the substantive merits of a union's decisions. The cases do not, however, retreat from *Vaca*'s limitation of court sanction to union conduct that transcends negligence. "[M]ere negligence on the part of a union does not rise to the level of a breach of the duty of fair representation." *Peters v. Burlington N. R.R.*, 931 F.2d 534, 538 (9th Cir.1991) (citing *Rawson*).

## III.

 Both the NLRB and the ALJ found that the Union's conduct amounted to no more than mere negligence. *Sheet Metal Workers*, 291 NLRB No. 41 at 1–2. We must affirm the Board's ruling if its

---

**2.** We advanced a similar position in *Le'Mon I.* 902 F.2d at 814.

**3.** Before *O'Neill,* it was by no means settled that a union had a fiduciary duty toward all of its

members. Indeed, in *Le'Mon I,* we noted that "no justice has suggested a broader duty with respect to *all* of the represented class of employees." 902 F.2d at 815 n. 4.

findings "are supported by substantial evidence on the record and if it correctly interpreted and applied the law." *Le'Mon I,* 902 F.2d at 812 (citing cases). "We are not free to overturn the Board's decision because we might have decided the matter differently. Rather, it is our responsibility to ascertain that the Board acts within reasonable bounds and that the supporting evidence is truly substantial." *Presbyterian/St. Luke's Medical Center v. NLRB,* 723 F.2d 1468, 1472 (10th Cir.1983) (citations omitted). A finding that conduct amounts to mere negligence should be reviewed under the same standard. *See Eichelberger v. NLRB,* 765 F.2d 851, 856 (9th Cir.1985); *see also Highland Superstores, Inc. v. NLRB,* 927 F.2d 918, 923 (6th Cir. 1991) (NLRB decisions on mixed questions of law and fact reviewed under substantial evidence standard).

The record supports the Board's findings. Le'Mon adopts the position of the dissenting member of the NLRB panel, *Sheet Metal Workers,* 291 NLRB No. 41 at 6–7 (Chairman Stephens, dissenting), arguing that the Union representatives' exhortation to continue the strike after they learned of its possible illegality goes beyond mere negligence. Mem. Brief of Pete Le'Mon at 13–14. However, Le'Mon does not argue that the evidence is insufficient to support the Board's characterization of the conduct of the Union representatives as negligence. He would simply characterize it differently. Even were we to agree with Le'Mon's characterization, we are not at liberty to substitute our judgment for that of the Board, if there is substantial evidence to support the Board's position. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

Le'Mon argues that the Union acted with knowledge of the strike's illegality throughout the relevant period. Mem. Brief of Pete Le'Mon at 13–14. The Administrative Law Judge found that this was not the case. Rather, the Union representatives were unable to verify the employer's claim of illegality and assumed that it was merely a tactic to break the strike. *Id.;* *Le'Mon I,* 902 F.2d at 812. Le'Mon rests his contention that the Union's conduct deserves sanction on his imputation of knowledge of illegality to the Union representatives. The Board found that they did not know, however, and we have no reason to upset this factual finding.

In our earlier opinion, we noted that the availability of ouster of the Union limited the scope of the duty of fair representation. *Le'Mon I,* 902 F.2d at 814. Although the Court in *O'Neill* rejected the notion that ouster is sufficient protection for the majority of union members against all union misbehavior, 111 S.Ct. at 1134, the Court's analogy to judicial review of legislative behavior underscores the important function of this political check. While a democratic check may not suffice to protect union members against all union action, it does suffice to protect employees against negligent representatives. If the union does not do its job, it may be fired. Here, the employees took action to decertify the union under section 9(c) of the NLRA, 29 U.S.C. § 159(c) (1988), and the union quit rather than face an election. Where union behavior is merely negligent, nothing more need be done, and courts should not intervene.

The order of the NLRB is affirmed.