FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**September 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ANTHONY J. HAMPTON,

    Plaintiff - Appellant,

v.

BAKERY, CONFECTIONERY &
TOBACCO WORKERS AND GRAIN
MILLERS INTERNATIONAL UNION
OF AMERICA, LOCAL 218, AFL-CIO,

    Defendant - Appellee.

No. 21-3218
(D.C. No. 2:21-CV-02010-TC-TJJ)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.

_____

Anthony J. Hampton was formerly employed by Frito-Lay, Inc.  After he was

terminated he filed a complaint against Bakery, Confectionery & Tobacco Workers

and Grain Millers International Union of America, Local 218, AFL-CIO (the Union),

which represents employees of Frito-Lay in collective bargaining.  The complaint

asserts claims for breach of the duty of fair representation (DFR) and for race

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

discrimination in violation of 42 U.S.C. § 1981.  The district court granted the

Union's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim and entered judgment for the Union.  Mr. Hampton appeals.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. <u>Background</u>

Because we are reviewing a dismissal for failure to state a claim, we assume

the truth of the following facts taken from Mr. Hampton's complaint.  *See Brooks v.*

*Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir.), *cert. denied*, 142 S. Ct. 477

(2021).  Mr. Hampton, who is African-American, worked in Frito-Lay's receiving

department.  Beginning in 2018 a coworker, George Kistler, frequently visited the

receiving department for purposes unrelated to work and expressed offensive and

inflammatory comments and opinions to Mr. Hampton or in his presence, including

about race.  The comments "created a racially intimidating, hostile, and offensive

work environment for Mr. Hampton."  Aplt. App. at 8.  On a visit in October 2018,

Mr. Hampton asked Mr. Kistler to leave the receiving department.  When Mr. Kistler

asked if Mr. Hampton was going to "rat [him] out," Mr. Hampton said that Mr.

Kistler's managers already knew about his "unwelcome visits."  *Id.* at 9 (internal

quotation marks omitted).  At the end of his shift Mr. Hampton told his manager

about the incident with Mr. Kistler.  The next day, he gave his manager and the

Human Resources Director a written statement describing the incident and the history

of Mr. Kistler's visits to the receiving department.  He denied threatening or striking

Mr. Kistler.

About a week later, Frito-Lay suspended Mr. Hampton from his employment without pay pending an investigation of the incident. During the investigation Mr. Kistler told the investigator that Mr. Hampton had "used profanity toward him" and had "made physical contact with him." *Id.* at 11. Two other employees who witnessed the incident signed written statements that "confirmed there was physical contact inflicted on [Mr.] Kistler by [Mr.] Hampton in the workplace." *Id.* at 12 (internal quotation marks omitted). Frito-Lay decided to terminate Mr. Hampton's employment based on its "zero-tolerance policy" concerning workplace violence, and to offer him a confidential severance agreement whereby he would not return to work but would remain eligible for benefits for nine months, when he would have access to his pension. *Id.* (internal quotation marks omitted). Frito-Lay, through the Union, offered Mr. Hampton the severance agreement.

Meanwhile, Mr. Hampton filed a grievance concerning his suspension. The Union requested information from Frito-Lay about his suspension, including copies of all statements it obtained during the investigation. The materials Frito-Lay provided in response to the request included the coworkers' statements corroborating Mr. Kistler's claim that Mr. Hampton had used profanity and made physical contact with him. The Union did not give Mr. Hampton the statements and did not tell him about them.

Unaware of the statements, Mr. Hampton rejected the severance agreement. A Frito-Lay manager then sent Mr. Hampton a letter informing him that he was being terminated because the investigation established that he "used profanity toward . . .

3

and used [his] person to physically contact" another employee in violation of the company's work rules. *Id.* at 14 (internal quotation marks omitted).

Mr. Hampton then filed a grievance concerning his termination. At a meeting with his Union representative and the manager to discuss the grievance, Mr. Hampton denied having physical contact with Mr. Kistler. About a month later, the manager denied the grievance, concluding that "there were no subsequent findings to overturn the termination." *Id.* at 15 (internal quotation marks omitted).

Mr. Hampton sued Frito-Lay and Mr. Kistler. During discovery in that case he learned for the first time about the coworkers' statements that supported Mr. Kistler's allegations. The parties settled that lawsuit, and the case was dismissed.

Mr. Hampton then filed this lawsuit against the Union. For his DFR claim Mr. Hampton alleged that the Union represented him in the grievance procedure "in an arbitrary and racially discriminatory manner, and in bad faith" by failing to show him the coworkers' statements and by failing to tell him that they supported Mr. Kistler's allegations regarding Mr. Hampton's use of profanity and physical contact against him. Aplt. App. at 16. For his racial-discrimination claim Mr. Hampton alleged that the Union discriminated against him "because of his race by . . . failing to reasonably advise him that the [coworkers'] statements . . . supported Mr. Kistler's allegation," thus "impairing his right to make and enforce" the severance agreement. *Id.* at 17.

The Union moved to dismiss both claims for failure to state a claim.[1]  The district court granted the motion and dismissed the complaint.

## II.  Standard of Review

Because the legal sufficiency of a complaint is a question of law, we review de novo a dismissal under Rule 12(b)(6) for failure to state a claim, applying the same standards that should have been applied in the district court.  *See Cnty. of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002).  To avoid dismissal, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotation marks omitted).  In conducting our review, we accept all well-pleaded facts as true, view them in the light most favorable to Mr. Hampton, and draw all reasonable inferences in his favor.  *See Brooks*, 985 F.3d at 1281.  We "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  *Khalik*, 671 F.3d at 1191.  Our duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

---

[1] The Union also sought dismissal of the DFR claim on statute-of-limitations grounds, but the district court did not address that alternative basis for dismissal.

### III.  Discussion

#### A.  Dismissal of § 1981 Claim

As pertinent here, 42 U.S.C. § 1981 prohibits discriminatory interference with an individual's right to make and enforce contracts.  To state a prima facie claim under § 1981, Mr. Hampton was required to show that (1) he is a member of a protected class, (2) the Union intended to discriminate against him on the basis of his membership in the protected class, and (3) the alleged discrimination interfered with his right to enter into and enforce the severance agreement with Frito-Lay.  *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).  He alleged that he is African-American, that the Union "discriminated against [him] by failing to reasonably advise him [about] the [coworkers'] statements," and that this allegedly discriminatory conduct "caused [him] to decline to sign" the severance agreement.  Aplt. App. at 17.  The district court held that his claim failed to satisfy the second and third elements.  We agree that Mr. Hampton pleaded insufficient facts to show that the Union intended to discriminate against him (the second element), so we need not address whether its conduct interfered with his ability to enter into the severance agreement (the third element).

The complaint alleged that Mr. Kistler made inflammatory race-related comments to Mr. Hampton, that Mr. Hampton complained to Frito-Lay management about Mr. Kistler, and that "his discharge from employment was racially discriminatory."  Aplt. App. at 15.  But Mr. Hampton did not allege any facts showing that the Union or any agent of the Union was involved in any alleged race

6

discrimination by Mr. Kistler or Frito-Lay, that any aspect of the Union's handling of his grievance was motivated by racial animus, or that the Union treated similarly situated employees differently. He made conclusory allegations that the Union's failure to tell him about the coworkers' statements was discriminatory, but without supporting facts those allegations are insufficient to state a plausible discrimination claim. *See Khalik*, 671 F.3d at 1193-94.

We are not persuaded otherwise by Mr. Hampton's argument that his claim was based on "indirect evidence" of racial discrimination, Aplt. Br. at 27, and that he stated a plausible claim because "the timing or sequence of events leading" to the Union's failure to tell him about the coworkers' statements "give rise to an inference of unlawful discrimination," *id.* at 29-30 (internal quotation marks omitted). Nor are we persuaded by his related argument that he "established a prima facie case of race discrimination" under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), because the Union failed to "provide[] any explanation for why it" did not tell him about the statements. Aplt. App. at 29-30.

True, indirect evidence, including the timing or sequence of events leading to an adverse action, can give rise to an inference of discrimination. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012); *see also Hampton*, 247 F.3d at 1108-09. But any indirect evidence of race discrimination described in the complaint involved Mr. Kistler and Frito-Lay, not the Union. Mr. Hampton pointed to no evidence—direct or indirect—suggesting that any conduct by the Union was racially

motivated.  He thus failed to meet his initial burden of establishing a prima facie

case.  *See Khalik*, 671 F.3d at 1193-94.  Accordingly "his entire case fail[ed],"

*Barlow* 703 F.3d at 505, so the Union was not required to offer an explanation, *see*

*id.* at 506.

## B.  Dismissal of DFR Claim

A union has a duty of fair representation when representing its members in a

grievance or arbitration procedure.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S.

151, 164 (1983).  The Supreme Court has described this duty as an implied "statutory

obligation to serve the interests of all members without hostility or discrimination

toward any, to exercise its discretion with complete good faith and honesty, and to

avoid arbitrary conduct."  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).[2]

To prevail on a DFR claim, the plaintiff must prove (1) the union breached its

duty of fair representation; (2) the breach affected the integrity of the grievance

process, and (3) the employer's discharge of the employee violated the collective-

bargaining agreement between the employer and the union.  *See Webb v. ABF Freight*

*Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998).  The district court concluded that

Mr. Hampton's allegations as to the first and third elements were insufficient to state

a plausible claim.  Because we agree that Mr. Hampton failed to plausibly plead that

---

[2] The duty of fair representation was first "developed . . . in a series of cases . . . under the Railway Labor Act" and later was "extended to unions certified under the [National Labor Relations Act]."  *Vaca*, 386 U.S. at 177.  Therefore, DFR cases apply interchangeably to claims arising under either statutory scheme. *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 75-77 (1991).

the Union's failure to tell him about the coworkers' statements breached its duty of fair representation, we need not address whether he alleged sufficient facts showing that Frito-Lay's termination of his employment violated its collective bargaining agreement with the Union.

A union's duty to its members is "akin to the duty owed by other fiduciaries to their beneficiaries" in that unions, like fiduciaries that "owe their beneficiaries a duty of care as well as a duty of loyalty, . . . owe[] employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991). But a DFR claim is not a breach-of-fiduciary-duty claim. And DFR claims are not governed by general fiduciary-duty principles—they are governed by claim-specific standards established by the Supreme Court. *See Webb*, 155 F.3d at 1238-39 (discussing Supreme Court cases establishing DFR standards).

Under those standards, "[m]ere negligence on the part of a union does not rise to the level of a breach of the duty of fair representation." *Le'Mon v. N.L.R.B.*, 952 F.2d 1203, 1205 (10th Cir. 1991) (internal quotation marks omitted). Instead, a union breaches the duty of fair representation only when its actions are (1) arbitrary, (2) discriminatory, or (3) in bad faith. *O'Neill*, 499 U.S. at 67. In *Webb* we recognized that perfunctory grievance processing is a specific kind of misconduct covered under this tripartite standard. *See* 155 F.3d at 1240. We agree with the district court that Mr. Hampton failed to allege sufficient facts to state a plausible claim under any prong of the fair-representation analysis.

9

Showing arbitrariness requires more than pleading "mere errors in judgment," *Young v. United Auto. Workers-Lab. Emp. & Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1996) (internal quotation marks omitted). "[C]arelessness or honest mistakes are not sufficient . . ." *Webb*, 155 F.3d at 1240. A union acts arbitrarily only when its conduct "is so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted).

Mr. Hampton contends that the union's failure to tell him about the coworkers' statements corroborating Mr. Kistler's story was arbitrary because providing "no advice" about the statements "or the consequent advisability of signing the" severance agreement was "as unreasonable as giving irrational advice." Aplt. Br. at 20. We are not persuaded. Initially, we note that Mr. Hampton's complaint, although alleging that the Union failed to tell him about the damaging statements, did not allege that he sought counsel from the Union on the advisability of signing the agreement. Absent a more complete description of the circumstances surrounding the Union's representation of Mr. Hampton in the grievance proceedings, one cannot plausibly infer that the reason for the failure to inform him of the interviews of his fellow employees was the result of anything more than an oversight or negligence. He cites no authority—and we are aware of none—supporting a claim of arbitrariness in similar circumstances. "The grievance processes cannot be expected to be error-free," and a union's mere negligence during a grievance proceeding does "not state a claim for breach of the duty of fair representation." *Young*, 95 F.3d at 997 (internal quotation marks omitted). Mr. Hampton's allegations were thus insufficient to

10

plausibly plead that the Union's failure to tell him about the statements was arbitrary. *See Le'Mon*, 952 F.2d at 1205 ("negligent behavior is not arbitrary").

Nor did Mr. Hampton plausibly plead a claim under the discrimination prong of the fair-representation analysis. "Only invidious discrimination breaches the duty of fair representation." *Schwartz v. Bhd. of Maint. of Way Emps.*, 264 F.3d 1181, 1186 (10th Cir. 2001) (internal quotation marks omitted). As pertinent here, discrimination is invidious if it is based on race "or arises from prejudice or animus." *Id.* (internal quotation marks omitted). As we explained in concluding that Mr. Hampton failed to plausibly plead discrimination for his § 1981 claim, he alleged no facts suggesting that the Union's motivation for not telling him about the coworkers' statements was that he is African-American. *See id.* (affirming judgment for union where plaintiffs did not show "*why* [they] were treated differently—the crucial question for a duty of fair representation discrimination claim"). And he alleged no facts suggesting that the Union was motivated by some other prejudice or animus against him.

The bad-faith prong of the DFR analysis requires a plaintiff to plead facts reasonably showing that the union's conduct (or omission) was fraudulent, deceitful, or dishonest. *See id.* Mr. Hampton asserted no facts that even come close to satisfying that standard, and he does not meaningfully contend otherwise.

Finally, Mr. Hampton did not plausibly plead a claim that the Union's handling of his grievance was so perfunctory as to breach its duty. To show that its processing of his grievance was perfunctory, he needed to plead facts demonstrating

11

that the Union "ignore[d] a meritorious grievance," *Webb*, 155 F.3d at 1239, or handled his grievance in an "apathetic, indifferent, and cursory way," *id.* at 1240. But according to the complaint the Union investigated Mr. Hampton's suspension, promptly requested information from Frito-Lay, and represented him at the meeting with management to discuss his grievance. Again, while the Union's failure to tell Mr. Hampton about the coworkers' statements may have been negligent, negligence is not enough to establish a breach of the duty of fair representation, and aside from that transgression, he alleged no facts suggesting that the Union handled his grievance perfunctorily. *See Nelson v. Holmes Freight Lines, Inc.*, 37 F.3d 591, 595 n.4 (10th Cir. 1994) (union's processing of the plaintiff's grievance was not perfunctory where the union's agent made "a prompt and diligent effort . . . to have [the] grievance heard and decided").

## IV.  Conclusion

The order dismissing Mr. Hampton's complaint for failure to state a claim is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge